## TOWNSEND *v.* VANDERWERKER.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 73. Argued November 20, 1895. — Decided December 16, 1895.

A court of equity in the District of Columbia may take jurisdiction of a bill brought against the administrator and heirs of an intestate, alleging a verbal agreement between the intestate and the plaintiff by which the plaintiff was to contribute one half of the cost of a tract of land and of a dwelling-house to be erected thereon, and the intestate, after entering on the property, was to convey to him a half interest therein,

and setting forth his performance of his part of the agreement, and her repeated recognition of her obligation to perform her part thereof, and her death without having done so after having mortgaged the property for a debt of her own, and praying for an accounting, and a decree directing payment to the plaintiff of one half of the value of the real estate and improvements, and a sale of the same; and the court may decree specific performance of so much of the contract proved as can be enforced, and compensation to the plaintiff in damages for the deficiency.

While the mere payment of the consideration in money in such case is insufficient to remove the bar of the statute of frauds, such payment, accompanied by an entry of the other party into possession under the contract, is such a part performance as will support a bill like the present one.

The question of laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but upon whether, under all the circumstances of the particular case, the plaintiff is chargeable with a want of due diligence in failing to institute proceedings earlier; and, under the peculiar circumstances of this case, the bill is not open to the defence of laches.

The bill in this case is not open to the charge of multifariousness.

THIS was a bill in equity to recover one-half the value of a certain piece of real estate in Washington, with the house thereon standing, of which one Julia R. Marvin died seized, together with a like proportion of the rents of the said house and lot received by Mrs. Marvin during her lifetime, or due and unpaid since her death.

The amended bill, which was brought against the heirs at law of Julia R. Marvin, the administrator of her estate, and the trustee named in a deed of trust of the property in question, averred in substance that said Julia R. Marvin was seized in fee and possessed of a certain lot of land upon Sixteenth Street in the city of Washington; that she died on February 3, 1889, intestate as to her real estate; and that letters of administration were granted by the probate court to the defendant Hood.

After several immaterial averments as to the relationship of the several defendants, the execution of a trust deed to secure the payment of $10,000, the collection of rents by the intestate Marvin and her administrator, the bill averred in substance as follows:

That in March, 1879, an agreement was entered into be-

tween the plaintiff and Mrs. Marvin by which he agreed to contribute in money and in labor one-half of the original cost of the said parcel of land and a dwelling-house to be erected thereon, and in consideration thereof Mrs. Marvin agreed to convey to him a half interest in the land and dwelling-house, so that the same should be owned jointly by himself and Mrs. Marvin; "that at the time of making said agreement there was no note or memorandum thereof in writing, but in performance of the same on his part the plaintiff gave his personal attention and supervision to the selection and purchase of the materials for the said dwelling-house and the erection of the same," and also expended the sum of four thousand dollars ($4000) in defraying the cost of the house; that this agreement, although not reduced to writing, on account of the intimate personal relations existing between the parties and the entire confidence they reposed in each other, had been fully performed by the plaintiff, the amount of money contributed by him, and the value of his services in selecting and purchasing the materials for the dwelling-house and in superintending the erection of the same being equal altogether to one-half the cost of the land and house; that Mrs. Marvin died without having executed her part of the agreement by conveying to the plaintiff the half interest in the land and house, although she had repeatedly recognized the claim in her lifetime, and had declared to plaintiff and others that she had made adequate provisions for the same in her last will and testament; that the services of the plaintiff were rendered in the years 1879 and 1880, and the money paid by him in defraying the cost of the house and land was paid during the years 1879, 1880, 1881, 1882, 1883, and 1884 in various sums to Mrs. Marvin, and sent to her in drafts by mail, as is evidenced by her repeated acknowledgments to him and others during her lifetime and by certain checks endorsed by her.

That from the time of the rendition of the said services and the payment of the said money by the plaintiff in performance of his said agreement, until the day of the death of the said Julia R. Marvin, the plaintiff constantly and repeatedly urged her to come to a settlement with him and to perform her part

of the agreement by conveying to him a one half interest in the parcel of land and the dwelling-house erected thereon; that she always, whenever the subject was referred to, recognized and acknowledged the validity and justice of the claim, and assured the plaintiff that she had provided for the same in her last will and testament; that on the 4th day of January, 1888, she " admitted to a mutual friend that the house never would have been built but for the fact that she and the plaintiff had built it together, and that he had taken the management of it all, as she never could have done and never would have attempted; that he had paid her in all four thousand dollars ($4000), which she had used; that such was her feeling towards him that she intended the house should be his when she was done with it, and should belong to them jointly while she lived; that on the 14th day of November, 1887, she acknowledged to the same mutual friend that the plaintiff had since 1878, when the lot was bought and they began planning for the house, up to 1883 paid her four thousand dollars ($4000); that she had always regarded the house as belonging to them jointly; that she intended it should be his at her death, and that her will, then written, had so provided;" that on account of her repeated and constant acknowledgment of the validity of his claim by her, and on account of the representations hereinbefore referred to as having been made to the said mutual friend and others, which representations were communicated to the plaintiff, and on account of the intimate personal relations always existing between them, and the unlimited confidence he reposed in her, they having lived together for a long time in the same dwelling-house, and she having treated and spoken of him as a foster child, the plaintiff failed and omitted to take such measures for the enforcement of his rights as under other circumstances he would have taken. The plaintiff averred that by the course adopted by her and without any fault on his part he had been lulled into a false security, and that he would have instituted his suit during her lifetime for the specific performance of her contract but for the assurance, repeatedly made to him and to others, that she had by her will devised the entire property to him; that the

plaintiff did not know until the death of Mrs. Marvin of her failure to carry out her agreement, when he learned to his surprise that she had died intestate as to her real estate.

The prayer of the bill was that an account might be taken of the debt claimed by the plaintiff to be due him; an account of the debt due to White, in whose favor the trust deed had been executed, and of other debts and demands against the estate; an account of the value of the lot and house and of other real estate of which Mrs. Marvin died seized; an account of the rents received by Mrs. Marvin during her lifetime, and since her death; and for a decree directing payment to the plaintiff of a sum equal to half the value of the house and lot and of the rents received or due, for a sale of the house and lot for the purpose of paying the same, and for a distribution of the residue of the proceeds among those entitled thereto as next of kin or heirs at law.

A demurrer was interposed to this amended bill, which was sustained by the Supreme Court, and an appeal taken to the general term, by which the decree of the special term was affirmed, and the bill dismissed. 20 Dist. Col. 197. Plaintiff thereupon took an appeal to this court.

*Mr. John Goode* and *Mr. Benjamin Butterworth*, (with whom was *Mr. J. C. Dowell* on the brief,) for appellant.

*Mr. J. H. Lichliter* for appellees.

I. The suit as for recovery of a debt, or of damages for a breach of an oral agreement for the sale of land, is barred by the statute of limitations.

If the suit be regarded as one brought to recover a debt from the estate of the deceased, Julia R. Marvin, or damages for a breach of the alleged oral agreement to convey a half interest in the lot of ground mentioned in the bill, the case is barred by the statute of limitations.

By the law of the District of Columbia actions for a simple contract debt and for debt for arrearages of rent and for damages for the breach of a contract are barred by the statute of limitations unless brought within three years ensuing the

causes of such actions. Maryland Statute 1715, c. 23, § 2; *Shepherd* v. *Thompson*, 122 U. S. 231.

II. The appellant's remedy was plain, adequate, and complete at law. Recovery of damages for breach of a contract cannot be had in equity. *Kempshall* v. *Stone*, 5 Johns. Ch. 193.

The appellant had ample time during the lifetime of Julia R. Marvin, from March, 1879, to February, 1889, to assert his claim for a debt, or for damages.

III. The alleged agreement, if made, for a conveyance of a half interest in the lot and house mentioned in the bill, comes within the statute of frauds, and, not being in writing, no action can be brought upon it.

If the bill be regarded as brought to secure the specific performance, directly or indirectly, of the alleged oral agreement for the conveyance of a half interest in the lot of ground mentioned in the amended bill, the statute of frauds is a complete bar, and it is presented as a defence by the demurrer. *Purcell* v. *Miner*, 4 Wall. 513; *Williams* v. *Morris*, 95 U. S. 444; *Randall* v. *Howard*, 2 Black, 585; *Dunphy* v. *Ryan*, 116 U. S. 491; *May* v. *Sloan*, 101 U. S. 231; *Repetti* v. *Maisak*, 6 Mackey, 366; *Wristen* v. *Bowles*, 82 California, 84; *Fortescue* v. *Crawford*, 105 N. C. 31; *Tilton* v. *Tilton*, 9 N. H. 385; *Brown* v. *Lord*, 7 Oregon, 302, 309.

IV. The allegations of the amended bill do not show acts sufficient to constitute part performance so as to take the alleged verbal agreement out of the statute of frauds.

The allegations are that the complainant paid a certain sum of money and gave his personal attention and supervision to the selection and purchase of the materials for the house and the erection of the same, the amount of money paid by him and the value of his services being equal altogether to one half the cost of the land and the house erected thereon.

The amended bill shows that the deceased owned and had the possession of the land or lot at the time of the making of the alleged agreement; that she built the house; that she rented the house and collected all the rents, paid the taxes, made all the repairs, controlled and dealt with and encum-

bered the property at will; that she retained the possession to the time of her death, and now her heirs have it.

Assuming the allegations of the bill to be true, the appellant has done nothing more than pay money, through a period of six years, and render services that could be adequately measured and fully compensated by pecuniary recovery or damages. Such acts do not meet the equitable doctrine of part performance.

The least act that constitutes part performance to take a verbal contract for the sale of land out of the statute of frauds is possession taken of the land in pursuance of the contract. *Purcell* v. *Miner*, 4 Wall. 513; *Williams* v. *Morris*, 95 U. S. 444; *Moore* v. *Small*, 19 Penn. St. 461; *Ackerman* v. *Fisher*, 57 Penn. St. 457; *Cuppy* v. *Hixon*, 29 Indiana, 522; *Dugan* v. *Gittings*, 3 Gill, 138, 157; *Gangwer* v. *Fry*, 17 Penn. St. 491.

The payment of the purchase money, (whether in money or in services whose value can be estimated,) is not of itself an act of part performance to take a verbal agreement for the sale of land out of the statute of frauds. The cases sustaining this proposition are summed up and cited in Story's Eq. Jur. § 761; Pomeroy on Contracts, §§ 112, 114; Browne on Statute of Frauds, § 461; Reed on Statute of Frauds, § 592; *Lester* v. *Foxcroft*, 1 Lead. Cas. Eq. 881, notes, 885 *et seq.*

V. The appellant has been guilty of laches—his claim is stale and such as a court of equity will not countenance.

The amended bill shows that the alleged agreement was made on the—day of March, 1879, between the complainant in person and Julia R. Marvin; that Julia R. Marvin died February 3, 1889, nine years and eleven months after the making of the alleged agreement; that during that time she had unquestioned possession of the lot and house mentioned in the bill and collected the rents without protest from the complainant or demand for any part of them; that the complainant did not take any steps to assert his alleged rights in the property until after her death; that as late as August 9, 1888, the said Julia R. Marvin in dealing with the property encumbered it by a deed of trust to secure the payment of $10,000, and that she died seized of it.

And, in addition to the facts that the appellant had full personal knowledge of his rights, if any, for almost ten years before Mrs. Marvin's death, and there was no impediment to an earlier suit, there were many inducements for him to act with diligence.

Some of the later cases decided upon the subject of laches by this court are: *Halstead* v. *Grinnan*, 152 U. S. 412, 416; *Johnston* v. *Standard Mining Co.*, 148 U. S. 360; *Galliher* v. *Cadwell*, 145 U. S. 368; *Hammond* v. *Hopkins*, 143 U. S. 224, 250, 273; *Underwood* v. *Dugan*, 139 U. S. 380; *Hanner* v. *Moulton*, 138 U. S. 486, 492, 495.

In cases of this kind the death of parties who could explain the transaction has always been regarded as a controlling circumstance. *Hammond* v. *Hopkins*, 143 U. S. 224, 273, 274; *Mackall* v. *Casilear*, 137 U. S. 556; *Godden* v. *Kimmell*, 99 U. S. 201; *Jenkins* v. *Pye*, 12 Pet. 241

VI. The amended bill is multifarious.

The special prayer of the amended bill in the case at bar is peculiar, to say the least; and if it is to be considered, it renders the bill multifarious. The tenth paragraph of the bill sets out a verbal agreement to convey an interest in land; and the eleventh paragraph declares the object of the bill to be to secure the " benefit of the same." The special prayer is for the payment of " a debt;" not, however, a debt in a definite and fixed sum, but " equal to one-half the value of said house and lot and one-half of the rents of the same received and collected by the said Julia R. Marvin in her lifetime and accruing since her death."

A contract to convey land is not, and cannot be, a contract to pay a debt. In respect of one and the same transaction, if it ever occurred, the complainant demands the performance of a contract to convey land and prays the payment of a debt — matters of different natures.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

1. The ultimate object of the bill in this case is the recovery of a pecuniary demand, and, if this were its only object, it

would be obnoxious to the general rule embodied in Rev. Stat. § 723, inhibiting the maintenance of a suit in equity where the remedy at law is plain, adequate, and complete.

The bill, however, in addition to the recovery of money, seeks to establish a trust in favor of the plaintiff, and to obtain a sale of the property to satisfy his claim. The prayer is, not for a reimbursement to the plaintiff of the sums advanced, but for the payment to him of a sum equal to one-half the value of the house and lot in which he claims an interest, and of the rents accrued thereon. Had it not been for the fact that, subsequent to the outlays made by the plaintiff in improving the property, Mrs. Marvin had encumbered it by a trust deed in favor of Amos White, in the sum of $10,000, an ordinary bill for a specific performance would have been the proper remedy; but as the court upon such a bill could only decree him one half the property subject to such mortgage, he claims in this bill the full moiety of the value of the property, as it stood when the disbursements were made, and before it was incumbered by the mortgage, and prays that such amount may be awarded him from the sale of the property; and that in respect to the residue, if any, he stand as a general creditor of her estate.

The case is not unlike that of *Wylie* v. *Coxe*, 15 How. 415, where a bill was filed to recover a contingent fee of five per cent out of a certain fund arising from the prosecution of a claim against the Republic of Mexico. It was held that the death of the owner of the fund did not dissolve the contract, but that the right to compensation constituted a lien upon the money when recovered, and that this was sufficient ground for jurisdiction in equity, inasmuch as the payment of the fund to the executrix in Mexico would place it probably beyond the reach of the complainant.

Still more nearly analogous in principle is the case of *Seymour* v. *Freer*, 8 Wall. 202, 215. This suit was founded upon an agreement between Seymour and one Price, by which Price undertook to devote his time and judgment to the selection and purchase of land to a certain amount, with a stipulation that the lands should be sold within five years, and one-half

of the profits should be paid to Price and the other to Seymour. It was held that Seymour took the legal title in trust for the purpose specified, and to this extent Seymour was a trustee and Price the *cestui qui trust;* that the trust continued after the expiration of the five years, unless Price subsequently relinquished his claim, and that the land which was to be converted into money should be regarded and treated in equity as money. " The agreement," said Mr. Justice Swayne, " that the property should be sold, and half of the profits paid to Price, was a charge upon the property, and gave him a lien to the extent of the amount to which he should be found entitled upon the execution of the agreement, according to its terms." In reply to the contention that Price had a complete remedy at law, he further observed: " An action at law, sounding in damages, may undoubtedly be maintained in such cases for the breach of an express agreement by the trustee, but this in nowise affects the right to proceed in equity to enforce the trust and lien created by the contract. They are concurrent remedies. Either, which is preferred, may be selected. The remedy in equity is the better one. The right to resort to it under the circumstances of this case admits of no doubt, either upon principle or authority. Such, in our judgment, were the effect and consequences of the contract."

The earlier English cases held broadly that where a vendor of land had disabled himself from carrying out a contract to sell the land to the plaintiff, by a subsequent sale to another party, a court of equity would entertain a bill as for a specific performance, and award damages to the plaintiff. This was the distinct ruling in *Denton* v. *Stewart,* 1 Cox Ch. Cas. 258, where the court directed an inquiry as to what damages the plaintiff had sustained, and decreed that such damages should be paid by the defendant. A similar ruling was made in *Greenaway* v. *Adams,* 12 Ves. 395, although the Master of Rolls indicated a doubt with regard to the soundness of the principle announced in *Denton* v. *Stewart.* In *Gwillim* v. *Stone,* 14 Ves. 128, the bill asserted from the first that defendant could not make a good title, and asked for compensation by reason of the failure of the contract, and a decree was

made for delivering up the contract, without prejudice to an action, instead of an inquiry before the master.

In *Todd* v. *Gee*, 17 Ves. 273, 279, the case of *Denton* v. *Stewart* was practically overruled by Lord Chancellor Eldon, who held that the plaintiff in a bill for specific performance was not entitled generally to satisfaction by way of damages for the non-performance, to be ascertained by an issue, or reference to a master, the court saying " that, except in very special cases, it is not the course of proceeding in equity to file a bill for specific performance of an agreement; praying in the alternative, if it cannot be performed, an issue or an inquiry before the master with a view to damages. The plaintiff must take that remedy, if he chooses it at law. Generally, I do not say universally, he cannot have it in equity, and this is not a case of exception." This case was followed in *Ferguson* v. *Wilson*, L. R. 2 Ch. 77, where the plaintiff prayed the specific performance of a resolution, passed by the board of directors of a railway company, under which he alleged that he was entitled to have a certain number of shares allotted to him; and also prayed that if it should appear that all the shares had been allotted to other shareholders, the directors might indemnify him out of their own shares, or might be charged with damages. All the shares having been allotted before the filing of the bill, it was held that, as no remedy by way of specific performance was possible, plaintiff's claim for damages failed also.

The principle of these cases was also adopted by Chancellor Kent in *Kempshall* v. *Stone*, 5 Johns. Ch. 193, which is strongly relied upon by the appellees in this connection. In that case, the defendant entered into an agreement with the plaintiff to sell and convey him a lot of land, and, after the time of performance had elapsed, sold the land to a third person for a valuable consideration without notice of the agreement. Plaintiff filed his bill for a specific performance, which it was held could not be decreed, the lands having passed into the hands of a *bona fide* purchaser without notice, and the court further held that the plaintiff's remedy was at law for compensation in damages. In this case, as well as in the English

cases above cited, there was no possible lien upon the land, and no trust in favor of the plaintiff which the court could execute, and it was very properly held that his only remedy was at law.

But if the defendant has not wholly disabled himself from carrying out the contract, he may be decreed to perform specifically so much as he is still able to perform, and plaintiff may recover damages for the residue. Thus in *Burrow* v. *Scammel*, 19 Ch. D. 175, when the defendant's title came to be investigated it was found that she was possessed of only a moiety of the premises she had agreed to lease to the plaintiff, the other moiety being vested in her son, a minor. She was decreed to specifically perform so much of the contract as she was able to perform, with an abatement of half the rent, and an inquiry as to damages was refused only upon the ground that there was no evidence that plaintiff had sustained any damages. The American cases are also to the effect that, where the defendant has only partially disabled himself from carrying out the contract, the plaintiff may be entitled to a specific performance so far as it can be enforced, and may receive compensation in damages for the deficiency. 3 Pomeroy Eq. Juris. §§ 1405, 1407; *Bostwick* v. *Beach*, 103 N. Y. 414.

In the case under consideration, Mrs. Marvin had but partially disabled herself from carrying out her contract with the plaintiff according to its original terms, by incumbering the property with the trust deed in favor of White. Under such circumstances, the plaintiff might have filed a bill for a specific performance *pro tanto*, and obtained a decree for a conveyance of one half of the property to himself, subject to a moiety of the trust deed: but we think he also had the option of treating the whole property as subject to a lien in his favor, and praying that it be sold to satisfy his claim for half of its original value. He would doubtless have a remedy at law to recover the value of his services as well as the moneys disbursed by him. This, however, under the averments of his bill, would not be the amount to which he would be justly entitled. It is possible that, in an action at law, he might also recover a personal judgment against the estate for one

half the value of the property in question; but this is not the complete and adequate remedy which a bill to enforce a trust in his favor upon the property in dispute would afford to him, and we think it is not beyond the power of a court of equity to entertain a bill for this purpose. *Sullivan* v. *O'Neal*, 66 Texas, 433.

2. Does the Statute of Frauds stand in the way of a decree in his favor? As there was no contract in writing, plaintiff must maintain his bill, if at all, upon the theory of a part performance. He must maintain it, too, upon the same principles and with the same cogency of proof as if it were in fact, as well as in substance, a bill for a specific performance. In this connection, the allegation is in effect that the plaintiff arranged with Mrs. Marvin to pay half the cost of the lot, and half the cost of erecting a dwelling thereon, he to purchase the materials and superintend the erection of the dwelling, and that each was to own half the property; that he performed his contract in full; that she not only never questioned that he had paid his half in full, but stated to him and to mutual friends that he had paid in full, and was jointly interested with her in the premises; that his ownership of half of the premises was never disputed by her, but was openly recognized, and that, when he requested a settlement and that she convey his half to him, she replied that she had provided for that in her will, by which she gave him the entire property.

Admitting to the fullest extent the proposition that a mere payment of the consideration in money is insufficient to remove the bar of the statute, there is no doubt that such payment, accompanied by an entry into possession under the contract, is such a part performance as will support the bill. This court so expressly decided in the case of *Neale* v. *Neales*, 9 Wall. 1. And in *Brown* v. *Sutton*, 129 U. S. 238, it was held that, where the defendant's intestate bought certain property for the complainant, under a promise made orally that he would make over the title to her upon consideration that she should take care of him during the remainder of his life, as she had done in the past, there had been sufficient part performance of this parol contract to take it out of the operation of the statute

of frauds, and render it capable of being enforced by a decree for specific performance. Similar cases of promises to convey property upon the consideration of support are frequent in the books. *Gupton* v. *Gupton*, 47 Missouri, 37; *Sutton* v. *Hayden*, 62 Missouri, 101; *Hiatt* v. *Williams*, 72 Missouri, 214; *Watson* v. *Mahan*, 20 Indiana, 223; *Twiss* v. *George*, 33 Michigan, 253; *Warren* v. *Warren*, 105 Illinois, 568; *Patterson* v. *Patterson*, 13 Johns. 379.

The general principle to be extracted from the authorities is that if the plaintiff, with the knowledge and consent of the promisor, does acts pursuant to and in obvious reliance upon a verbal agreement, which so change the relations of the parties as to render a restoration of their former condition impracticable, it is a virtual fraud upon the part of the promisor to set up the statute in defence, and thus to receive to himself the benefit of the acts done by the plaintiff, while the latter is left to the chance of a suit at law for the reimbursement of his outlays, or to an action upon a *quantum-meruit* for the value of his services. In discussing what are and what are not acts done in part performance, which will entitle the plaintiff to a decree in his favor, the entry into possession of the land and the making of valuable improvements thereon is treated by all the cases as one of the most satisfactory evidences of part performance, and entitling plaintiff to a decree in his favor. 3 Pomeroy Eq. Juris. § 1409; Fry on Spec. Perf. § 585. *Wills* v. *Stradling*, 3 Ves. Jr. 378; *Mundy* v. *Jolliffe*, 5 My. & Cr. 167; *Williams* v. *Evans*, L. R. 19 Eq. 547.

Although there is no distinct allegation in this bill that the plaintiff entered into possession, there is an allegation that the land in question consisted of a lot 34 feet in width by 110 feet in depth, and that the plaintiff gave his personal attention to the selection and purchase of the materials for a dwelling-house, and the erection of the same upon this lot, and paid $4000 in defraying the cost of the house — facts which are inconsistent with any other theory than that he took possession of the lot for the purpose of erecting the house. *Whitsitt* v. *Trustees Presbyterian Church*, 110 Illinois, 125. If he subsequently, and after the completion of the house, allowed Mrs.

Marvin to take possession of the lot, in view of the intimate relations between them, he lost no rights as against her which he obtained by his original entry, and the erection of the house. The possession thus taken was evidently in performance of and in reliance upon the original agreement with the owner, and, we think, taken in connection with the improvements made by him it makes a case of part performance sufficient to remove the bar of the statute. His subsequent relinquishment of such possession was evidently with no intention to abandon the interest he had already acquired in the property. *Drum* v. *Stevens*, 94 Indiana, 181.

3. We are also of opinion that, under the peculiar circumstances of this case, the bill is not open to the defence of laches. It is true the advances were made at sundry times from 1879 to 1884, and the bill was not filed until 1889, but the delay is sufficiently accounted for by the intimate personal relations that had always existed between the plaintiff and Mrs. Marvin, and the unlimited confidence he had reposed in her. It is alleged in this connection that they had long lived together in the same house ; that she had treated him and spoken of him as a foster child; that from the time the services were rendered until her death he had repeatedly urged her to come to a settlement with him; that, whenever the subject was referred to, she acknowledged the justice of the claim, and assured him she had provided for him in her will, saying that she intended the house to be his when she was done with it, and that it should belong to them both while she lived; that on this account he had neglected to take measures for the enforcement of his rights; and that he did not know until her death that she had failed to carry out her promise to devise the entire property to him.

Dealing with a person who stood in this relation to him, and with whom he had always been upon friendly and even intimate terms, the same diligence could not be expected of him as would have been if he had been treating with a stranger. If, as he avers, she had promised to leave him the entire property at her death, he may have considered it to his advantage to await this contingency, rather than to pursue

her for half the property during her life. As she died in February, 1889, and the bill was filed in October of the same year, there can be no claim that, with reference to this event, he did not act with sufficient promptness. The only circumstance that occurred during the period of nine years from the time the contract was made which was calculated to excite his suspicion that she did not intend to carry out her alleged agreement, was the execution of a trust deed in favor of White, of which, however, there is nothing in the bill to indicate that he had actual notice. While the record of this trust deed would operate as constructive notice to subsequent purchasers or encumbrancers of the property, it is at least doubtful whether it would have the same effect as to one who stood in plaintiff's relation to the property. *Howard Ins. Co.* v. *Halsey*, 8 N. Y. 271; *Bates* v. *Norcross*, 14 Pick. 224; *James* v. *Brown*, 11 Michigan, 25; *Cooper* v. *Bigly*, 13 Michigan, 463; *Idlehart* v. *Crane*, 42 Illinois, 261; *Doolittle* v. *Cook*, 75 Illinois, 354.

The question of laches does not depend, as does the statute of limitation, upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under all the circumstances of the particular case, plaintiff is chargeable with a want of due diligence in failing to institute proceedings before he did. In this case, we think the delay is fully explained. *Gunton* v. *Carroll*, 101 U. S. 426. It is true that one of the parties to this alleged agreement has died, and that the court has lost the benefit of her testimony with regard to the alleged agreement. This, however, is a circumstance to be considered by the court in weighing the evidence, rather than as an obstacle to the maintenance of the bill upon demurrer.

There are doubtless circumstances in the case which indicate at least a difficulty of proof, if not to arouse a suspicion, that perhaps the plaintiff may have overstated his case, but the pleader in a bill in equity is not bound to state either the testimony or facts which militate against his theory, but only to present his case in the light most favorable to his own interests, and ask that, upon such presentation, the court shall decide upon the sufficiency of his bill.

4. We do not think the bill is open to the charge of multifariousness. While the tenth paragraph sets out a verbal agreement to convey an interest in land, and the prayer is for the payment of a certain amount of money, the discrepancy is explained by the fact that, in view of the trust deed to White, a decree for a half interest in the land will fail to satisfy plaintiff's claim, and that his lien is claimed to extend not merely to the half interest but to the whole property, to satisfy her promise to convey to him a moiety of its unencumbered value. Of course, nothing that is here said can affect the rights of White.

The decree of the court below is therefore

*Reversed and the case remanded with directions to overrule the demurrer and for further proceedings in conformity with this opinion.*