**Chicago & Western Indiana Railroad Company, Appellant, v. Chicago & Eastern Illinois Railroad Company, Appellee.**

**Gen. No. 16,153.**

1. CHANCERY—*who are necessary parties.* On bill against a railway company to enforce alleged covenants to use the terminal facilities of another incorporated company exclusively, such terminal company is a necessary party to the bill though the "tenant" companies owning all the stock therein are before the court.

2. CHANCERY—*when corporation not estopped by decree against its owning corporations.* An incorporated railway company is not estopped from bringing a bill to enforce alleged covenants to use its facilities exclusively, though its stock is owned by five companies,

and on action by four of such companies against the fifth to enforce the same covenants a decree was entered against the complainants.

3. LACHES—*what constitutes.* It would seem that laches depends on whether the complainant is chargeable with want of due diligence in not instituting proceedings sooner and not on whether any definite time has elapsed since the cause of action accrued.

4. LACHES—*when not waived.* Where a railway company alleged to be bound by covenant to use the terminal facilities of another company is permitted by contract by the terminal company, though under protest, to construct connecting tracks with another company and to use other facilities without prejudice to rights under the covenants, such terminal company must bring its action on the covenants within a reasonable time, though possible future litigation is mentioned in the contracts but no waiver of the defense of laches is mentioned therein.

5. CONTRACTS—*when cannot be implied.* No implied promise to use a terminal company's station permanently by a railway company which owns part of the stock of the terminal company can be deduced from the fact that tracks connecting with those of another company were not built when the terminal station was constructed and that at the time of such construction the railway company intended to use the station permanently.

6. COVENANTS—*what considered in construing.* Where action is brought by a railway company, all the stock of which is owned by five other companies, to enforce an alleged covenant against one of such companies to use its terminal facilities exclusively, the fact that such terminal company is independent only in name should be considered in construing the covenants.

7. CORPORATIONS—*when action is practically that of majority of stockholders against minority.* Where a railway company, all of the stock of which is owned by five other companies, brings action against one of such companies to enforce alleged covenants to use the terminal facilities of such railway company exclusively, the litigation is practically that of the owners of four-fifths of the stock against the owner of one-fifth.

8. COURTS—*when expressions of federal court in action on same subject-matter not "gratuitous."* Where the same contracts which were before the federal court in a former action are before the Appellate Court and the decree sought is practically the same, the expressions of the federal court as to such contracts are not "gratuitous" and if *dicta* are judicial *dicta* and not *obiter dicta.*

Appeal from the Circuit Court of Cook county; the Hon. G. A. CARPENTER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed October 1, 1912.

WILLIAM S. KIES, KRETZINGER, ROONEY & KRETZ-
INGER, and SCOTT, BANCROFT & STEPHENS, for appel-
lant; GEORGE W. KRETZINGER, FRANK H. SCOTT, W. O.
JOHNSON and W. H. BLODGETT, of counsel.

CALHOUN, LYFORD & SHEEHAN, for appellee; WILL H.
LYFORD, of counsel.

MR. PRESIDING JUSTICE CLARK delivered the opinion
of the court.

The appeal in this case brings up for review the
action of the Circuit Court of Cook county in sus-
taining a demurrer to a bill in chancery filed by the
appellant against the appellee, and dismissing the bill
for want of equity.

The appellant, the Chicago & Western Indiana Rail-
road Company, is a corporation organized under the
laws of the State of Illinois, the stock being held in
equal amounts by the appellee, the Chicago & East-
ern Illinois Railroad Company, also an Illinois corpo-
ration, and four other companies, the Grand Trunk
Western Railway Company, Chicago & Erie Railroad
Company, Chicago, Indianapolis & Louisville Railway
Company and the Wabash Railroad Company, com-
monly known as the "Grand Trunk," "Erie," "Mo-
non" and "Wabash," respectively, all of the capital
stock having been acquired by these five companies in
1882. These five companies are referred to in the briefs,
and will be hereafter referred to in this opinion, as
the "tenant companies." For some time prior to
1882, and until August 1, 1904, the Eastern Illinois
used in conjunction with the other four railroads the
Dearborn Station, so-called, in the City of Chicago.
In August, 1904, the control of the Eastern Illinois
having passed into the hands of the Chicago, Rock Is-
land & Pacific Railway Company, the Eastern Illinois
abandoned the use of Dearborn Station and began to
use the same passenger station as the Rock Island

Company.  A few months prior thereto suit was brought in the Circuit Court of the United States for the Northern District of Illinois by the Grand Trunk, Erie, Monon and Wabash companies against the Eastern Illinois, seeking a decree by which the Eastern Illinois would be enjoined from the threatened breach of its alleged obligation to use Dearborn Station for its passenger traffic at Chicago.  Upon hearing, this bill was dismissed for want of equity by the United States Circuit Court, and its action on review was sustained by the United States Circuit Court of Appeals.  Grand Trunk W. Ry. Co. v. C. & E. I. R. Co., 141 Fed. Rep. 785.  In that case thirteen agreements were before the court for consideration, being the same agreements upon which the bill of complaint in the case before us is based.  A careful analysis of them has been made by Mr. Justice Jenkins in the statement of facts preceding the opinion of the Court of Appeals.  We shall not undertake herein to make another analysis of these agreements, which are of great length, but shall refer to such statement.  A note to the opinion sets forth the views expressed by Judge Seaman when disposition was made of the case in the United States Circuit Court.  In both of the opinions it was held that the contracts before the court contained no covenant which expressly or impliedly bound the Eastern Illinois to use the tracks and facilities during the term (except the so-called exclusive property), but that they merely granted the right to such use. Both courts, however, expressly held that the Western Indiana Company was a necessary party to the bill, and that in its absence no relief could in any event be granted the complainants.

The bill prays for a perpetual injunction restraining the appellee from continuing to divert its business, or any part thereof, from the demised premises, or from any part thereof, and from failing or refusing to operate its passenger trains over the complainant's

tracks between Dolton and the terminus of said tracks at Dearborn Station; that appellee be restrained from using the terminal tracks or passenger station of any other corporation for its traffic at Chicago; that it be decreed to perform the covenants of the leases for the entire term, and that damages be awarded the appellant by reason of the diversion of the appellee's business; that the court ascertain the monthly sum claimed to be due appellant from appellee for its proportion of the costs and charges paid out by the appellant by reason of the diversion of its business from August, 1904, and that the appellee be decreed to pay to the appellant the sum of $551,246.50, with interest thereon, from the date of the delivery of certain bonds to the appellee, and that the interest on such bonds be capitalized to the date of their maturity, and the appellee be decreed to pay the capitalized account thereof.

The contentions of the appellee are substantially as follows: That there are no express covenants contained in any of the leases or agreements, which require the Eastern Illinois to use any part of the track or railroad facilities, or any station, of the complainant for any length of time or to any given extent, after the first day of July, 1902; that no covenants for such use can reasonably be implied from any express covenants in the instruments or by the mortgages given by the complainant; that the bill shows no damages of any kind suffered by the complainant; that if there had been express covenants in the leases and agreements they cannot be enforced, being contrary to public policy; that the complainant has been guilty of laches in bringing the suit, and that it is now estopped also by reason of the decree entered in the United States Circuit Court and heretofore referred to.

The appellant company is described by its counsel as "an agency, owned and controlled by appellee and the other tenant companies, whose function was to operate and maintain the terminal properties, for their

benefit.'' It is described by appellee's counsel as being a mere ''paper company.'' These descriptions are evidently suggested by the very unusual manner in which the affairs of the appellant are conducted. The stock is held in equal proportion by the five tenant companies, each of which companies is also obligated to pay one-fifth of the interest and principal of the bonds issued by the appellant. By contract it is arranged that this interest and principal be paid direct to the trustees under the trust deed by the tenant companies, and not through the appellant. Under various contracts, the maintenance expenses of the appellant are to be met by the five tenant companies and divided among them on the basis of wheelage. Any ''surplus earnings'' received for the use of its tracks from others than the five tenant companies, together with those from other sources, are paid quarterly direct to the five tenant companies in equal proportion, apparently without the formality of a dividend being declared. No one of the five companies under the contracts may dispose of its stock in the Western Indiana without offering it first to the other tenant companies. No company other than the five may be allowed by the Western Indiana to use its tracks, except with the unanimous consent of all five companies. Each of the five companies has representation on the board of directors. At directors' meetings, if the minutes of one which appear in the record correctly show the practice, the directors vote not in their individual names as directors, but in the names of the companies which they respectively represent. It was provided in one of the contracts that while the Western Indiana should have the general control and management of all the common property, and the employment and supervision of officers and employes, its acts and doings should be such only as the lessees should unanimously approve. In this way the appellant has by contract attempted at least to place limitations upon itself in the

performance of its corporate functions. Unlike an ordinary corporation, the conduct of its affairs, if the contract is enforceable, is not to be what a majority of the board of directors or a majority of the stockholders deem proper for its best interest, but its actions are limited to such as are approved by its so-called tenants, who must act unanimously. The tenants are the stockholders, and under the contracts a proposed action by the company might be blocked by the holder of one-fifth of the stock. Whether a corporation, such as the appellant, may thus limit itself by contract is, in our opinion, a question of great doubt, but one not necessary to be passed upon in this opinion. The appellant is a corporate legal entity, created as such under the laws of the State of Illinois. No decree, therefore, could properly be entered affecting its corporate rights in a suit to which it was not a party. Hence the Federal Circuit Court and the Court of Appeals properly held, we think, that the objection raised by the Eastern Illinois in that case, that the Western Indiana Company was a necessary party to the bill, was well taken. This conclusion was reached notwithstanding the fact that the owners of all the stock of the Western Indiana Company, to-wit, the five tenant companies, were before the court. It must logically follow, in our opinion, that the appellant is not estopped by the decree entered against the four of its stockholders who appeared as parties complainant in the suit referred to.

The question of laches of the appellant presents a somewhat more difficult question. The Eastern Illinois had run its passenger trains into the Rock Island station for three years before this suit was brought. It was enabled to do this by reason of a contract entered into between it and the Western Indiana made in 1904, whereby the latter granted a temporary license to the Eastern Illinois to construct tracks connecting the Western Indiana with the Rock Island

tracks. By a provision of the contract, no advantage was to be obtained, or even claimed, by the Eastern Illinois because of this license, in the case then pending in the Federal Court, and the Western Indiana reserved to itself all rights under the various contracts, without prejudice. In January, 1907, nearly two years after the decision was rendered in the United States Circuit Court of Appeals, the Western Indiana served notice upon the Eastern Illinois that under the contract of February 23, 1904, it would proceed to remove the connecting tracks between the Western Indiana and the Rock Island sixty days from the date of the service of the notice. On March 12th, of the same year, a contract was entered into between the parties, wherein it was recited that the Western Indiana was about to file a bill to enjoin the Eastern Illinois from diverting its passenger trains, and provision was made for the continued use by the Eastern Illinois of the connecting track between the Western Indiana and the Rock Island during the pendency of the suit. A constructive compliance with the resolution passed by the board of directors of the Western Indiana was arranged for by the agreement that a rail or frog might be removed by the Western Indiana and thereafter restored.

It has been held that the question of laches depends not upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether under all the circumstances the complainant is chargeable with want of due diligence in not instituting the proceedings sooner. (Townsend v. Vanderwerker, 160 U. S. 171.) The complainant having aided in what is now claimed to be a violation of contract by permitting, though under protest, the construction of the connecting tracks and the use thereof pending a judicial test as to the construction of the various agreements, in our opinion it was incumbent upon it to bring its action in a court of competent jurisdiction within a

reasonable time. We do not lose sight of the fact that possible future litigation was mentioned in the two contracts with reference to the construction and use of the connecting tracks, but we find in neither of the contracts any hint of a waiver on the part of the Eastern Illinois of a defense of laches.

If a decree should be entered in the present case in accordance with the prayer of the bill, the Eastern Illinois would be required to pay to the Western Indiana an amount equal to what its proportion would have been if it had continued to use the station, such amount to be measured by its passenger traffic in the City of Chicago. It is apparent that this sum for the period of three years during which the Western Indiana refrained from beginning suit would be very large.

Has the Eastern Illinois by its action in ceasing to use the Dearborn Station and the tracks therein and those leading thereto, violated any provisions of the contracts between it and the complainant. In the contracts made with Brown, wherein he agreed to construct the terminals, through a corporation by him to be formed, there is a distinct provision requiring the use of all the property during the full term covered. In the contract made shortly thereafter between the Western Indiana and the Eastern Illinois such a provision is absent. In all the subsequent contracts which were made from time to time between the Western Indiana and the Eastern Illinois, individually, and with it in connection with the other four tenants, we are also unable to find any express provision requiring a continuance of the use of any portion of the common property by all or any one of the tenants during the period covered by the contracts or leases. The various instruments bear evidence of such careful preparation and they are so explicit in their terms as to preclude entertainment of the idea that such omission was not by design. The optimistic presumption was apparently indulged in that the use of the terminal in all its parts would always be sought.

Counsel for appellant lay great stress upon the proposition advanced, that under the various contracts "the extent of the use to which appellee is bound is measured by its legitimate traffic in the City of Chicago, and the amount of its payments must be in proportion to the wheelage of all that traffic." It is argued that "no one of the tenants could conduct its Chicago traffic without using Dearborn Station, which was erected specially to accommodate the business of each." It is quite apparent that each of the tenants could conduct its freight traffic without the use of the station, and that the passenger traffic of appellee could otherwise be accommodated is made clear from the contract entered into just prior to the beginning of the present suit, in which it is recited that the Eastern Illinois had established connections with the Rock Island and was able to bring in its passenger trains via Oakdale and South Englewood to the Rock Island station. It may be that these connections had not been made at the time the Dearborn Station was constructed and that it was the then intention of the Eastern Illinois to use that station permanently, but we are unable to deduce from that fact any implied promise on its part so to continue its use. On the other hand, we think the deduction might fairly be made that the Eastern Illinois and the other tenants refused to be bound to a continuous use in order that they might make other arrangements if the station facilities became inadequate, or if for any other reason a change of passenger terminal by any one of them should in the future appear to be advantageous.

It has heretofore been pointed out that the Western Indiana is independent only in name, and this fact we think should be considered in construing the various contracts. If one of the five limited its use of some portion of the common property, or ceased entirely to use such portion, it was still obligated to pay its proportion of the cost and interest thereon. The

additional burden cast upon those who continued to use it was the possibility of having to pay severally a larger proportion of the cost of maintenance. It is easy to be supposed that they might willingly do this if by the withdrawal of one of the number the facilities accorded to them were increased. The Western Indiana would not be the loser; its maintenance would be assured, unless all five of the tenants deserted it, and this was evidently not considered as a possibility.

The litigation, so far as practical results are concerned in this court, as in the Federal Court, is really that of the stockholders owning four-fifths of the stock of appellant against the stockholder owning the one-fifth.

We are admonished by counsel for appellant not to be influenced by the "gratuitous expressions of opinion used by the Federal Court." The same contracts were before that court for construction as are now before us, and the decree sought practically the same. The expressions used are therefore not "gratuitous." If *dicta*, they are judicial *dicta*, as distinguished from *obiter dicta*. (Rhoads v. C. & A. R. R. Co., 227 Ill. 328.) They are not in any sense controlling, but are entitled to great consideration.

As we find nothing in the contracts, either express or implied, requiring the continued use of the passenger terminal, it becomes unnecessary to discuss the proposition advanced by the appellee that if they could be said to contain such provisions the provisions would be void as being against public policy. The same observation might be made as to many propositions advanced by appellant.

Without prolonging the opinion to greater length, we state it as our conclusion that the demurrer to the bill of complaint was properly sustained. It follows, therefore, that the decree of the Circuit Court must be affirmed.

*Affirmed.*