## DE LA NUX et al. v. HOUGHTAILING.

(Circuit Court of Appeals, Ninth Circuit. January 3, 1921.)

No. 3519.

1. **Reformation of instruments ⬳45 (1)—Proof of fraud or mistake must be clear and convincing.**

   To reform a written instrument for fraud or mistake, the evidence must be clear and convincing.

2. **Reformation of instruments ⬳45 (5)—Evidence held to show son deceived mother into conveying more property than she intended.**

   In an action to reform a deed to grantor's grandsons, by striking therefrom a clause conveying all the grantor's property, after the description of specific property, evidence *held* to show that the grantees' father deceived his mother into signing the deed, which she thought conveyed only the property particularly described.

3. **Reformation of instruments ⬳32—Remedy held not to have been lost by laches.**

   The right to reformation of an instrument is not lost by laches, notwithstanding a delay of six years in instituting the suit, where the rights of no third parties had intervened, and the grantor had been mentally incompetent for several years because of excessive drinking, so that a guardian for her was finally appointed.

4. **Equity ⬳69—All circumstances considered in determining laches.**

   The defense of laches does not depend on the lapse of a certain definite time, but depends on whether, under all the circumstances of the particular case, plaintiff is chargeable with a want of due diligence in failing to institute the proceeding sooner.

5. **Reformation of instruments** ⬅═➤24—**Demand on father of minor grantees is sufficient.**

If a demand on the grantees for reformation of a deed is necessary before the suit to reform it, a demand for such reformation on the father of infant grantees is sufficient.

6. **Appeal and error** ⬅═➤719 (3)—**Failure to make demand for reformation must be specified as error.**

The objection that no demand for reformation of a deed had been made before the suit was instituted for that purpose does not present a jurisdictional question, reviewable without specification of error.

In Error to the Supreme Court of the Territory of Hawaii.

Suit by Rebecca Houghtailing, through Frederick E. Steere, her guardian, against Daniel De La Nux and others, for reformation of a deed. A decree for plaintiff was affirmed by the Supreme Court of the Territory of Hawaii, and defendants bring error. Affirmed.

Rebecca Houghtailing, through her guardian, sued George F. De La Nux, Jr., and Daniel De La Nux, minors, her grandsons, for reformation of a deed. While suit was pending, George, Jr., died, and George F. and Lahapa De La Nux, father and mother and heirs of George, Jr., were made parties to the suit. The facts as recited by the trial court are:

That upon April 11, 1916, Rebecca Houghtailing was declared a spendthrift, within the meaning of the laws of Hawaii, because of excessive drink, and Steere was appointed guardian of her estate, and on April 19, 1917, was directed to proceed against defendants for reformation of the deed heretofore mentioned; that the deed purported to have been signed by Rebecca Houghtailing on June 10, 1905, and acknowledged before a notary November 8, 1905, and to have been recorded July 2, 1910. By the deed Rebecca Houghtailing, for and in consideration of love and affection for her grandsons, George De La Nux, Jr., and Daniel De La Nux, and in further consideration of $1, grants and conveys unto the said grandsons the property described, "now occupied by me as my home, together with the improvements thereon." Immediately following is the clause over which this suit arose: "And also all and singular my real and personal property by me possessed and wherever situate."

The court found that the parcel of land occupied by Rebecca as a home was so occupied by her at the time of the deed, and was occupied by her as a home at the time of the trial in 1919; that when the deed was made the grantor was about 49 years old; that in the year 1905, when the deed was made, and for many years before and after, two sons of plaintiff, Henry and Charles, and their families, lived with her; that when the deed was executed two children of her son Henry lived with her, one Bathsheba, the favorite grandchild of Rebecca, and who had lived with her from the time of her birth up to the beginning of 1919. Other findings were that George De La Nux, the father of the two minors and their guardian, left his mother, Rebecca, when he was about 7 years old, lived apart from her, and did not see her until 1899, except on a few occasions, and that his children rarely visited their grandmother, and that the grandmother made infrequent visits to her son George; that for 30 years Rebecca was addicted to the excessive use of liquor and thereby had impaired her mentality; that she never acquired much knowledge of business affairs, and that the management of her estate was left in the hands of others; that her mind became so impaired by the use of liquor that her son George, "a person of shrewd intellect, was able to influence her without much difficulty to execute the deed in the form above described and set forth"; that Rebecca, when she signed the deed, intended to convey to George, Jr., and Daniel, only the homestead; that in consequence of the trust and confidence reposed in her son George, Rebecca, relying on statements made to her by George, fully believed that the deed, which was prepared under instructions of George, was limited only to the conveyance of

⬅═➤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the homestead; that George deceived and defrauded her, by making her believe that the deed conveyed only the home, and that the deception and fraud was made possible by reason of the trust and confidence placed by her in her son George.

The court decreed that the deed be reformed by striking therefrom the words: "And also all and singular my real and personal property by me possessed and wherever situate." This left the deed valid for the home parcel. On appeal the Supreme Court of the Territory of Hawaii affirmed the decree. By writ of error the case is in this court, where it is contended that the Supreme Court erred in holding that the deed should be reformed on the grounds of fraud and deception, and in not dismissing the complaint on the ground of laches, and in not holding that the complaint failed to state the necessary and essential allegations to maintain the suit.

Lorrin Andrews and Wm. B. Pittman, both of Honolulu, T. H., for plaintiffs in error.

A. G. M. Robertson, A. L. Castle, C. H. Olson, W. A. Greenwell, Arthur Withington, and A. D. Larnach, all of Honolulu, T. H., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] To reform a written instrument upon the ground of fraud or mistake, the evidence must be clear and convincing. If the proofs are doubtful and unsatisfactory, and if the fraud alleged is not made very clear, equity will not grant relief. Ivinson v. Hutton, 98 U. S. 79, 25 L. Ed. 66; Northwestern Mutual v. Nelson, 103 U. S. 549, 26 L. Ed. 436. Such is the rule under which we inquire whether the transaction here involved was entered into as intended by the parties interested, or whether, because of the fraudulent conduct of the son, the deed fails to express the precise intention of the parties thereto. Pomeroy's Equity Jurisprudence, § 870.

[2] The proof is convincing that during 20 years before the time of the trial Rebecca Houghtailing was more or less under the influence of liquor. Near neighbors testified that she drank to excess nearly every day, and spent a great deal of money at saloons; that often she was so drunk that she was taken home by neighbors. George, her son, saw but little of his mother until about the year 1900, when he went to work on a plantation not far from his mother's home. It was in 1905 that George, in company with his mother, went to the office of an attorney, and there she signed the deed which has been ordered to be reformed. Rebecca stated on the trial that, after signing the deed, she asked her son not to record it, because she did not wish her two other sons to be displeased because of the gift of the property, which she believed was the homestead, that was conveyed to the children of George. According to her evidence it was about 1914 or 1915 that she learned that she had conveyed all her other property. Thereafter she engaged attorneys to take steps to have the deed corrected, but she first demanded of George that the deed should be reformed, inasmuch as he had committed a fraud upon her. Soon thereafter George drew up a form of letter and gave it to his mother to sign, wherein she discharged the counsel she had employed to proceed to have the deed corrected, and thereafter George persuaded her to give him a power

of attorney. It is also in evidence that, when she wrote the letter dismissing her attorneys, she was sick, and the suggestion that the letter be written came from her son George. After testifying that she remembered signing the deed, Rebecca said:

"I was thinking this homestead was the only thing he [George] wanted. I did not think he had more in the deed, and the reason why I trusted this boy, and I really did, he had been working around this and that, and I trusted him; I trusted the boy; and I told him, 'Well, you take your choice; this is the place you want, and you can have it;' and it was all right. * * * I didn't think the whole thing was going to be .put in this deed. Why should I?"

After explaining that she and her son went to the office of an attorney, she continued:

"I went to the place where he told me; of course. I had a little drink in me; not only that, this child that I had, thiś boy I trusted. he was my eldest boy, and I trusted, and I would trust him again; I would trust him he wouldn't do anything else to me like that, to me; I would give him this homestead; I told him the place was under mortgage, the Kalihi place was lunder mortgage, and 'you will have to look after this;' and he said, 'Yes;' and I don't think I took the trouble to read the whole thing."

She also said that she had previously told George that he could take the homestead, and that she went down to execute the deed at his request, and that she did not intend to sign a deed giving the two grandchildren all her real property and her personal property, and had she known that the deed contained any such provision she would not have signed it. At the time the deed was executed, the children of George were not living with Rebecca; but the children of another son were, and the evidence is that to one of them, Bathsheba, she was specially devoted.

It is unnecessary to recapitulate more of the evidence, which, we believe, sustains in all respects the findings and conclusions of the trial judge. We have not overlooked the testimony of the attorney who drew the deed that at the time of the execution of the deed Rebecca was not under the influence of liquor, nor that of George, her son, who said that his mother wanted to turn all her property over to him, but that he did not wish her to do so, and finally decided that his children should get her property, and that he had not recorded the deed because his mother asked him not to. Assuming that at the time of the execution of the deed Rebecca was not drunk, still it is plain that she made the instrument at George's solicitation, and did not understand that it conveyed all of her property. The testimony of George was not credited by the trial court, and a reading of it impresses us with the belief that, instead of being true to the natural obligations of a son to an unfortunate mother, he took advantage of her infirmity to violate the affectionate confidence she placed in him, and wantonly deceived her.

[3, 4] The question of laches remains. There is some evidence tending to show that Rebecca had knowledge of the fraud as far back as 1911; but there is also evidence that at that time, and thereafter up to the time of the appointment of her guardian, April 12, 1916, she was in such an enfeebled condition of mind as to excuse her in failing to in-

stitute suit. As the present action is to reform a deed, and as it is proven that Rebecca has been always in possession of the property, no rights of third parties having intervened since the deed under investigation was executed, it is proper to consider all the circumstances in concluding whether there has been a want of due diligence in failing to institute proceedings before they were actually begun.

"The question of laches does not depend, as does the statute of limitations, upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether under all the circumstances of a particular case plaintiff is chargeable with a want of due diligence in failing to institute proceedings before she did." Townsend v. Vanderwerker, 160 U. S. 171, 16 Sup. Ct. 258, 40 L. Ed. 383; Ruckman v. Cory, 129 U. S. 387, 9 Sup. Ct. 316, 32 L. Ed. 728; London and S. F. Bank v. Dexter Horton & Co., 126 Fed. 593, 61 C. C. A. 515; Rose v. Parker, 4 Haw. 593; McIntire v. Pryor, 173 U. S. 38, 19 Sup. Ct. 352, 43 L. Ed. 606.

[5, 6] The point that no demand upon the minors for reformation before the filing of suit was alleged or proved is not well taken; for, assuming, without conceding, that such demand was necessary, the evidence shows that there was a demand upon George, who was the natural guardian of his children. Moreover, as pointed out by the Supreme Court of the territory, the point was not contained in the specifications of error and is not a jurisdictional question.

The decree is affirmed.