**FIDELITY & DEPOSIT CO. OF MARYLAND v. CENTRAL BANK et al.**

No. 8979.

Circuit Court of Appeals, Eighth Circuit.
March 11, 1931.

Rehearing Denied May 4, 1931.

Horace Chamberlin, of Little Rock, Ark., for appellant.

George B. Rose, of Little Rock, Ark., D. H. Cantrell, J. F. Loughborough, A. W. Dobyns, A. F. House, and Wallace Townsend, all of Little Rock, Ark., on the brief), for appellees.

Before KENYON and BOOTH, Circuit Judges, and REEVES, District Judge.

REEVES, District Judge.

The appellant, as plaintiff below, sought to enforce an equitable lien. Its bill was dismissed for want of equity, and it has appealed.

Appellant became surety on two separate bonds of a contractor. Two contracts had been let which involved the improvement of the streets, curbs, and gutters within a prescribed district in the city of Little Rock, Ark. For the purpose of this improvement two municipal corporations had been formed under the laws of Arkansas, and were called improvement districts. They were managed by a board of commissioners.

The contracts were similar and contained provision for the payment of 90 per cent. to the contractor during the course of the improvements upon estimates of the work done. The contracts also contained a provision that "the balance will be retained by the board until the final estimate is allowed." Full or complete payments upon said contracts were to be made upon final inspection of the engineer. Such payments were to be made after the engineer had certified in writing "as to said completion and shall further certify as to the entire amount of each class of work performed and as to the value thereof."

There was a provision that upon receipt of such certificate notice should be given to "the contractor and his surety of the acceptance of the work and shall make final payment of same, all previous payments being deducted."

In the application for the bond, the contractor assigned to the appellant "as collateral, to secure the obligations herein," certain properties, tangible and intangible, including "any and all percentages retained on account of said contract and any or all sums that may be due under said contract at the time of said abandonment, forfeiture or breach, or that thereafter may become due."

It was stipulated in said assignment that it should "become effective as of the date of said contract bond, but only in the event of any such abandonment, forfeiture or breach of said contract or of a breach of any of said bonds, or of any of the agreements herein contained." The contracts and the applications to the surety were all dated December 4, 1926. When accepted, the contractor immediately began the improvements. Payments were made from time to time upon the estimates furnished by the engineer for the districts as the work progressed.

The appellee bank made loans to the contractor in January and February, 1927. These loans were in the sum of $5,000 each, but only two are involved in this controversy. About the 1st of August, 1927, the work had been completed to the satisfaction of the improvement districts and final estimates were certified by the engineer. Notice was thereupon given to the local agent of appellant. He approved final payment to the contractor. At approximately the same time advances were made to the contractor out of the balance of 10 per cent. retained by the official boards of the districts, but final payment was not made, as the contractor was not satisfied with the estimates. The contractor thereupon paid one of the $5,000 notes due the appellee bank. It may be inferred that such payment was made in part at least out of moneys advanced to the contractor from the retained 10 per cent. The officers of the improvement districts thought further notice should be given to the appellant, and on September 30, 1927, caused a notice to be given to the general agent of the appellant.

Upon the objections of the contractor, a new inspection was made. The engineer's report and certificate covering his resurvey was made and delivered on October 12, 1927. The final estimate as thus made was satisfactory to the contractor and the improvement districts. Even then they did not make final settlement with the contractor, although they had heard nothing from the appellant. On November 12, 1927, final settlement was made, and the balance of the retained percentages paid. Shortly thereafter the contractor paid a balance due on the second note of $5,000 involved in this controversy. The same inference may be drawn as to the source of funds used in such payment.

Appellant's suretyship involved an obligation for material as well as labor in the improvements. Late in December, 1927, and early in January, 1928, demands were made upon appellant by two creditors of the contractor who had furnished material. These demands were in the sum of $6,005.87 and $498.96, respectively. Both were paid by the appellant late in December, 1927, and early in January, 1928. In this proceeding appellant claims that the appellees knew of its rights in respect of the retained percentages, and, notwithstanding such knowledge, paid out and appropriated same for other purposes.

Appellant, by its bill, sought to have certain books, records, and accounts exhibited by the appellees. It also complains here that the trial court erred in overruling its application for the production of such documents and accounts. Other facts, as they become pertinent, will be stated in the course of the opinion.

■ 1. The court properly denied the application of the appellant for the production of documents. This being a proceeding in equity, appellant would be required to secure the production of documents under rule 58 of the Equity Rules (28 USCA § 723). That rule requires the annexation of interrogatories to the facts pleaded as a basis for the discovery. Pressed Steel Car Co. v. Union Pacific R. Co. (D. C.) 241 F. 964. The appellant did not observe this rule. Moreover, it was not made to appear that the appellees were in a position to produce the documents requested. Also the production of such documents would have been apparently cumulative evidence. Galion Iron Works v. Ohio Corrugated Culvert Co. (C. C. A.) 244 F. 427.

■ 2. That the appellant had an equitable lien upon the retained percentages in the hands of the improvement districts cannot be denied. Exchange State Bank v. Federal Surety Co. (C. C. A.) 28 F.(2d) 485. And, if said funds had been retained by said district, there is no question of the right of the appellant to have enforced the priority of its lien. However, its right to enforce such lien under its contract would only accrue to it "in the event of any such abandonment, forfeiture or breach of said contract or a breach of any said bonds, or any of the agreements herein contained."

It was the agreement that upon a final survey and estimate by the engineer of the districts, final payment should then be made to the contractor. In order that the surety might have an opportunity to assert the happening of contingencies which would enable it to enforce its lien, notice to it was provided for. The districts endeavored to give

such notice when the work was completed early in August, 1927. On the 30th of September, 1927, said districts again caused notice to be served. It was served this time upon appellant's general agent.

On October 12, after a resurvey by the engineer of the districts, the parties were satisfied. The contractor was then entitled to receive the retained percentages. This was in accordance with the contracts. However, the districts did not make final settlement until November 12, 1927. In the meantime, there had been no response from appellant, although its general agent had written on October 1, 1927, "I am referring the entire matter to my Home Office today asking that they advise me by wire regarding the matter. Immediately upon receipt of their reply, I will advise you."

The question is whether under the circumstances the appellant would be entitled to have a judgment against the appellees for sums disbursed by it to satisfy claims of materialmen. The appellant lost its lien when it neglected to assert same at the time final estimates were made and certified to the districts. The contract upon which it became surety provided that final payment should be made when the improvements were completed and final estimates made. It was duly notified. Appellant's local agent was first notified and assented to the payment. Its general agent, in reply to a notice given him on September 30, 1927, said:

"I am not in a position to release the retained percentages in connection with the above numbered bonds. * * *

"I am referring the entire matter to my Home Office today asking that they advise me by wire regarding the matter. Immediately upon receipt of their reply, I will advise you."

The districts received no further communications from the appellant or its agents. Under such circumstances, they were not called upon to hold the funds indefinitely. The rule is that "an equitable lien may be lost by negligent and unreasonable delay in proceeding to enforce it." 37 C. J. 338; Atlantic Coast Line R. R. Co. v. Burnette, 239 U. S. 199, 36 S. Ct. 75, 60 L. Ed. 226; Landrum v. Union Bank of Missouri et al., 63 Mo. 48, loc. cit. 56; Rankin v. Scott, 12 Wheat. 177, 6 L. Ed. 592; Townsend v. Vanderwerker, 160 U. S. 171, 186, 16 S. Ct. 258, 40 L. Ed. 383.

The cases cited by appellant are not applicable to the facts in this case. They either were cases where the fund remained in the hands of one of the contracting parties or where such funds had been disbursed under circumstances which enabled the claimant to invoke the principles of a preference in bankruptcy.

While the foregoing disposes of this appeal, yet there was evidence that appellant had obtained other security from the contractor. This fact, with the further circumstances of uncertainty as to the identity of the funds paid out, makes the enforcement of the lien doubtful at least, even if it had continued to exist.

The decree of the trial chancellor is affirmed.