## THRUSTON et al. v. NASHVILLE & AMERICAN TRUST CO. et al.

### No. 645.

District Court, M. D. Tennessee, Nashville Division.

April 26, 1940.

Frank & Thomas, of Dayton, Ohio, and Keeble & Keeble, of Nashville, Tenn., for plaintiffs.

Norvell & Minick, Seay, Stockell & Edwards, and Maddin & Maddin, all of Nashville, Tenn., for defendants.

FORD, District Judge.

General Gates P. Thruston, a wealthy citizen of Nashville, Tennessee, died in 1912, leaving a will by which he placed the major portion of his estate in the hands of the Nashville Trust Company of Nashville, Tennessee, and Robert Thruston Houk of Dayton, Ohio, as trustees, with the provision that the trustees should hold the title to the property, collect rents, pay taxes and give to the testator's son, Charles, such allowances from time to time as the trustees might deem wise and best for his sup-

port, education and other proper needs until his son Charles should reach the age of thirty years, at which time the trustees were directed to transfer and deliver to him one-half of the estate in fee, retaining the other half as a permanent trust for the benefit of Charles during his life and thereafter for the lives of his children, if any, with power and authority to the trustees to sell, convey or exchange the property held in the permanent trust for reinvestment or for such other purposes as might be necessary for the preservation or practical execution of the trust, with the further provision that in the event the testator's son Charles should die without issue, the property was to pass to the children of the testator's sister, Eliza Thruston Houk, and his brother, Dickinson Thruston, in equal shares.

The plaintiff, Charles M. Thruston, the principal beneficiary under the will, was only twelve years of age at the date of his father's death. Being the only surviving member of his father's immediate family, he was taken to Dayton, Ohio, to live with relatives and he has ever since remained a citizen of the State of Ohio.

The Nashville Trust Company assumed active management of the trust estate, Mr. Houk's participation being largely perfunctory.

Among the original assets of the trust estate were 100 shares of the capital stock of the Fourth and First National Bank of Nashville. By stock dividends, splitting of shares and the purchase of additional shares, the holdings of the trust estate in the stock of the National Bank were ultimately increased to 952 shares. On March 18, 1930, the trustee, the Nashville Trust Company, exchanged the 952 shares of the capital stock of the National Bank belonging to the trust estate for 1,269⅓ shares of the capital stock of a newly organized corporation known as "Fourth and First Banks, Inc." which will be hereinafter referred to as "the holding company". The exchange was made without the knowledge or consent of the plaintiff, Charles M. Thruston, or any other beneficiary and the trust company neither sought nor procured court authority for its action. At the time of the exchange the market value of the National Bank stock was $160 per share at which rate the stock owned by the trust, aggregating $152,320 in value, represented more than 50% of the value of the entire trust estate.

Charles M. Thruston became thirty years of age on April 6, 1930. On April 14, 1930, the estate was divided in accordance with the directions of the will, and one-half of the stock in the holding company was transferred to the plaintiff, Charles M. Thruston, in his own right and the other half remained with the trustees subject to the so-called "permanent trust". Under an agency agreement, the Trust Company continued to hold and manage the part of the estate which passed to Mr. Thruston.

In November 1930, the failure of Caldwell & Company, a large investment banking house of Nashville, which had been instrumental in promotion of the holding company, precipitated a collapse in the market value of the stock of the holding company from which it never recovered.

On October 16, 1935, Charles M. Thruston formally notified defendants of disaffirmance of the transaction by the beneficiaries, tendered and offered to return the holding company stock which he had received and demanded payment of one-half the market value of the National Bank stock as of March 18, 1930, with legal interest from that date, and on behalf of himself and his minor children demanded restoration to the permanent trust of the market value of the other half with like interest.

His demands being refused, for the enforcement of them, on October 29, 1935, he instituted this action in his own right and as guardian and next friend of his minor children. The children of Eliza Thruston Houk and Dickinson Thruston were later joined as plaintiffs.

The suit being between citizens of different states and the matter in controversy being in excess of the sum or value of $3,000, the Federal Court has jurisdiction. 28 U.S.C.A. § 41. Federal jurisdiction of such a claim for equitable relief on behalf of citizens of another state is not precluded by jurisdiction previously assumed by the probate court of the state. Payne v. Hook, 74 U.S. 425, 7 Wall. 425, 19 L.Ed. 260; Byers v. McAuley, 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed. 867.

As the basis for the claim that the exchange was a transaction which was voidable at the option of the beneficiaries of the trust, the bill, as amended, charges, in substance, that it was not authorized by the will; that the old Nashville Trust Company, the designated trustee, in exchanging

the stock of the National Bank for the stock of the holding company, breached its duty as such trustee in that it made the exchange to carry out a business project of its own and to serve its own selfish interest; that the trustee's position in relation to the transaction was then such that its self interest was in conflict with its duty as trustee, thereby depriving the trust of its disinterested judgment; that the exchange was in violation of the duty of the trustee to diversify trust investments and in violation of its duty not to invest trust property nor retain investments thereof in highly speculative securities, all of which allegations are denied by appropriate responsive pleadings.

Allegations in reference to an alleged breach of duty on the part of the trustee in respect to the sale of certain securities and the reinvestment of the proceeds in an additional block of 182 shares of the National Bank stock, a transaction which took place in 1928, were, with leave of court, withdrawn by the plaintiffs and stricken from the bill.

The defendant, Nashville and American Trust Company, is a corporation which came into existence in 1931 as the result of a merger or consolidation of the old Nashville Trust Company, the original trustee under the Thruston will, with another trust company of Nashville known as the American Trust Company. The merger was accomplished under the authority of and pursuant to chapter 29 of the Public Acts of the Tennessee Legislature of 1931, by which such corporations were authorized to consolidate or merge into a single new corporation by mutual agreement and upon compliance with the requirements of the Act. In respect to the assets and liabilities of the constituent corporations, the Act provides: "* * * all the rights and franchises and interests of each such bank so consolidated or merged, in and to every species of property, real, personal and mixed, and choses in action thereto belonging, shall be deemed to be transferred to and vested in such consolidated corporation without any deed or other transfer * * * but always upon condition that it assumes all liability and other obligations of the constituent corporation, * * * and all debts, liabilities and duties of the respective former corporation shall thenceforth attach to said consolidated or merged corporation and may be enforced against it to the same extent as if said debts, liabilities or duties had been incurred or controlled by it." Section 2.

By an amended bill filed on April 16, 1936, Fourth and First National Bank and the holding company, Fourth and First Banks, Inc., were joined as defendants and charged with liability to the plaintiffs for the claims asserted upon the grounds (1) that they and each of them, through identical boards of directors, dominated and controlled the old Nashville Trust Company, caused and brought about the transaction complained of and with full knowledge of the attendant facts and circumstances and the limitations of the trust, actively participated in the alleged breaches of trust; and (2) that as a part of the arrangement and plan pursuant to which the old Nashville Trust Company, the trustee, was merged with the American Trust Company, they "contracted to indemnify, guarantee against loss and save harmless" the Nashville and American Trust Company from any losses or liabilities "arising out of the unforeseen, unreflected and contingent liabilities" of the old Nashville Trust Company, and that "the defendant so contracted for the benefit of the plaintiffs herein."

By the same amendment, the American National Bank was joined as a defendant, but, on motion of the plaintiffs, the action as to it was later dismissed.

In respect to the present defendant, Nashville Trust Company, referred to in the record as the "new" Nashville Trust Company, the plaintiffs at first asserted that it was jointly liable with the other defendants for the alleged derelictions of the trustee, the "old" Nashville Trust Company, on the ground that in 1933, pursuant to a contract between Horace G. Hill and his associates and the Nashville and American Trust Company, this defendant took over all the assets of the Nashville and American Trust Company and assumed its liabilities. By answer this defendant denied these allegations and averred that the only assets which it acquired from the Nashville and American Trust Company were taken over pursuant to a contract of purchase and sale without knowledge or notice of the plaintiffs' claims.

Thereafter, by an order entered on September 23, 1937, the plaintiffs were permitted to amend their original bill by inserting the following language: "In June 1936 the Nashville and American Trust Company and the 'new' Nashville Trust Company to wit, the corporation referred

to hereinabove in this Section as having been organized by Mr. Horace G. Hill and associates, merged and consolidated under the terms, provisions and authority of Chapter 29 of the Public Acts of Tennessee of 1931. Plaintiffs aver that by said merger under said act the 'new' Nashville Trust Company without question became obligated to discharge any and all of the liabilities of the Nashville and American Trust Company, and of the 'old' Nashville Trust Company, and became liable explicitly for all of the damages alleged and sought in this suit, all as hereinbefore and hereinafter set out."

I find nothing in the record to support the allegations of the original bill that in 1933 the defendant, the "new" Nashville Trust Company, which was organized in 1933, by contract assumed the liabilities of the Nashville and American Trust Company to these plaintiffs or acquired any assets of the Nashville and American Trust Company with knowledge of the existence of plaintiffs' claims.. It thus appears that liability of this defendant to the plaintiffs, if any, must be found in the merger proceedings of 1936. By the provisions of the Tennessee Statute of 1931, under which mergers are authorized and pursuant to which this merger took place, the merger resulted in the creation of a new corporation to which the Act transferred all the assets of the constituent corporations and upon which it imposed liability for their respective debts and obligations. (See quotation from Act hereinbefore set out). The Act also provides that in pending proceedings against either of the constituent corporations "the new corporation may be substituted in the place of the constituent corporation" or the action "may be prosecuted to judgment as if such consolidation or merger had not taken place." I find nothing in the Act which purports to impose upon either of the constituent corporations the liabilities or obligations of the other. While it is true that, by the 1936 merger, the corporation born of the consolidation retained the name "Nashville Trust Company", nevertheless it was a new corporate entity, separate and distinct from the constituent corporations. The new corporation thus brought into existence never having been substituted for either of the defendants, nor otherwise made a party to this action, its rights and liabilities are not before the Court for determination.

For the reasons indicated, my conclusion is that the plaintiffs failed to show themselves entitled to relief against the present defendant, Nashville Trust Company, and the action as against it should be dismissed.

This leaves for consideration the merits of the case only as between the plaintiffs and the defendants, "Nashville and American Trust Company", "Fourth and First National Bank" and "Fourth and First Banks, Inc."

In addition to denying plaintiffs' allegations in reference to breaches of trust alleged to have been committed by the "old" Nashville Trust Company or active participation therein by the National Bank and the holding company, the defendants plead and rely upon numerous affirmative defenses which are, in substance, that in view of all the facts and circumstances attending the transaction the trustees had full power and authority to make the exchange of stock complained of; that the stock of the holding company was substantially equivalent to the National Bank stock for which it was exchanged; that the action taken by the trustee was in the utmost good faith, for the best interest of the trust estate and in the exercise of the full measure of care, prudence and diligence required of it by law; that the cause of action asserted by the plaintiffs is barred by the Tennessee Statutes of Limitation; that by reason of acquiescence, affirmance and ratification on the part of Charles M. Thruston he is estopped to complain of the exchange of the stock and the suit is barred by his laches; and that the same facts likewise constitute a bar to the action on behalf of the permanent trust, contending that none of the other plaintiffs have an interest entitling them to maintain the action for the reasons: (1) the attempted devise of an equitable life estate to the children of Charles M. Thruston, following an equitable devise of a life estate to Charles Thruston himself, was void because this equitable life estate to the children might not vest within the life or lives in being, and twenty one years and ten months thereafter, and therefore violated the rule against perpetuities; (2) the limitation over to the children of Mrs. Houk and Mr. Dickinson Thruston in the event Charles M. Thruston dies without issue, is merely an executory devise, and hence is of such an uncertain character as to give them no present right or interest; and (3) that this executory de-

vise did not take effect because the gift over after the death of Charles M. Thruston, under proper construction of the will, is dependent upon Charles M. Thruston's death in the lifetime of the testator.

The cause was referred to a Special Master, who, after extensive hearings, filed an exhaustive report setting out in detail his findings of fact and conclusions of law sustaining practically all of the contentions and defenses asserted by defendants and recommending that the suit be dismissed.

The case is submitted upon numerous exceptions to the Master's report. However, the plaintiffs now insist only upon such of their exceptions as challenge the Master's conclusions and his inferences or deductions from established facts. Presumptions in favor of the Master's findings of fact, under former Equity Rule 61½, 28 U.S.C.A. following section 723, and under the present Rule of Civil Procedure No. 53(e) (2), 28 U.S.C.A. following section 723c, have no application to the Master's conclusions or deductions derived from established facts, Ohio Valley Bank Co. v. Mack, 6 Cir., 163 F. 155, 24 L.R.A.,N.S., 184; Edw. Budd Mfg. Co. v. C. R. Wilson Body Co., 6 Cir., 21 F.2d 803, and any presumption in favor of the Master's conclusions can be of slight importance when his findings are based wholly upon inferences, the reasonableness of which may be as fairly determined by the Court as by him. Kycoga Land Co., Inc., v. Kentucky River Coal Corp., 6 Cir., 110 F.2d 894, decided April 3, 1940.

Prior to 1927, the Nashville Trust Company and the Fourth and First National Bank were entirely independent of each other. In the early part of 1927, the stockholders of the Fourth and First National Bank acquired substantially all of the capital stock of the Nashville Trust Company, the stock being placed in the hands of three trustees who were officers of the National Bank and who held the stock for the equal pro rata benefit of the stockholders of the bank. From March 1927 until after the transaction herein complained of, the board of directors of the National Bank and the Trust Company consisted of the same individuals. Mr. James E. Caldwell was president of both corporations.

On January 17, 1930, the board of directors of the Trust Company, which was also the board of directors of the National Bank, adopted resolutions authorizing and directing its officers to join with the officers of the National Bank in the consummation of a plan for the organization of a new corporation to be known as "Fourth and First Banks, Inc." with power to acquire all the capital stock of the National Bank and of the Trust Company by exchanging therefor the stock of the new corporation upon the basis of one and one-third shares of the new stock for one share of the National Bank, and urgently recommending that the stockholders make the exchange.

On February 13, 1930, pursuant to the plans agreed upon by the interlocking directorate, the holding company, Fourth and First Banks, Inc., was organized under the laws of Tennessee with authority to issue 200,000 shares of stock of the par value of $20 each, the nature of the business to be transacted by the holding company being "to buy or otherwise acquire stock of the Fourth and First National Bank of Nashville, Tennessee, stock of the Nashville Trust ·Company of Nashville, Tennessee, and other stock, bonds, real estate and property, tangible and intangible, and to hold, enjoy, pledge, mortgage, assign, transfer and sell same * * * exercise all of the powers conferred by the laws of the State of Tennessee upon corporations formed under chapter 90 of the Public Acts of the General Assembly for the year 1929." The officers of the Trust Company, together with the officers of the National Bank, actively and energetically promoted the sale of stock in the new holding company and so effective were their efforts that practically all of the stock of the National Bank was exchanged for that of the holding company. Control of other banks in the South was acquired by the holding company in the same manner. The same persons who were directors of the National Bank and of the Trust Company were also made the directors of the new holding company, Mr. James E. Caldwell being the president of all three corporations. Furthermore, the "Fourth and First National Company", a state corporation organized to deal in securities, a wholly owned and controlled subsidiary of the Nashville Trust Company, actively engaged in buying and selling stocks of the bank and of the holding company. Both the Trust Company and the National Bank actively participated in promoting a highly speculative market in these stocks by making large loans to purchasers with the stocks as collateral.

Such were the conditions which prevailed on March 18, 1930, when the 912 shares of National Bank stock held by the Trust Company in trust under the Thruston will were exchanged for stock in the holding company. It is clear from the record that the main and predominating purpose of the concert of action of the Trust Company and the National Bank in organizing the holding company was the promotion and development of an ambitious plan to engage in group or chain banking through which many banks over a wide area would be grouped under a single control. Obviously these designs were motivated by the expectation of enormous profits for the promoters.

These facts and circumstances make it clear not only that the trustee, the Nashville Trust Company, was under the complete domination and control of the National Bank and the holding company, but that its interests were identical with theirs in the plan to carry out the fantastic scheme for which the holding company was designed. The same directors being in control of all three of the corporations, the situation was not materially different from that wherein the trustee is both the seller and the buyer of the trust property.

No principle is more fundamental in the law governing trusts than that it is the duty of the trustee to administer the trust solely in the interest of the beneficiaries, and that in dealing with the trust property he shall not occupy a position in which there is or may arise a conflict between his self interest and his duty to the trust. The rule is intended "to provide against any possible selfish interest exercising an influence which can interfere with the faithful discharge of the duty which is owing in a fiduciary capacity." Magruder v. Drury, 235 U.S. 106, 35 S.Ct. 77, 82, 59 L.Ed. 151; Michoud v. Girod, 4 How. 503, 45 U.S. 502, 11 L.Ed. 1076.

"The trustee violates his duty to the beneficiary not only where he purchases trust property for himself individually but also where he has a personal interest in the purchase of such a substantial nature that it might affect his judgment in making the sale." 1 Restatement of the Law of Trusts, § 170, comment c.

"A corporate trustee cannot properly sell trust property to one of its officers or directors. So also, it cannot properly sell trust property to another corporation where the directors are the same, or where so many of the directors of the two corporations are the same that there would be a substantial temptation to consider the advantage of the purchasing corporation rather than that of the beneficiaries of the trust." 1 Restatement of the Law of Trusts § 170, comment d.

A trustee prostitutes its trust when it uses it for the promotion of its own speculative enterprises. First National Bank of St. Petersburg v. Solomon, 5 Cir., 63 F.2d 900. In such a case a court of equity does not stop to inquire whether such a transaction was fair or unfair, or whether it was prudent or in good faith, for "the law makes no distinction as to the sincerity behind the act of investing where the investment is without the bounds of legal approval." Gates v. Plainfield Trust Co., 121 N.J.Eq. 460, 191 A. 304, 318.

Tennessee cases in accord are: Perkins et al. v. McGavok, 3 Hayw. 265, 4 Tenn. 265; Tisdale v. Tisdale, 2 Sneed 596, 34 Tenn. 596, 64 Am.Dec. 775; Cannon v. Apperson, 14 Lea 553, 82 Tenn. 553; Marion Trust & Banking Co. v. Roberson, 151 Tenn. 108, 268 S.W. 118.

The value of these salutary rules of equity, designed to avoid the danger of conditions arising which would be subversive of fiduciary honesty and integrity, lies to a great extent in their inflexibility. The guarantee which they give that beneficiaries of a trust shall at all times have the benefit of the unbiased and disinterested judgment of the trustee would be lost unless courts of equity enforce them "with uncompromising rigidity." Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A. L.R. 1.

The inseparable interests of the trustee, the "Nashville Trust Company", the "Fourth and First National Bank" and the holding company, "Fourth and First Banks, Inc." in the transactions here involved produced a situation substantially the same as that which prevails where a trustee uses the funds of a trust estate in promoting its own private business. Neither a showing of good faith nor prudence can make permissible such a transaction forbidden by the established policy of the law. Even if the will of General Thruston, expressly or by implication, conferred general authority on the trustees to sell or exchange the securities held in the trust, no protection would thereby be afforded the trustee for investing assets of the trust in

its own hazardous venture into an unexplored field of speculation and high finance.

The Master's conclusion that the exchange, under the circumstances disclosed, did not constitute a breach of duty on the part of the trustee seems to rest, in the main, upon his finding that many outstanding, successful and conservative business men living in Nashville exchanged their stock in the National Bank for stock in the holding company, and that the trustee acted in good faith and for what it conceived to be the best interest of the trust estate, and without any intention to commit a wrong or to defraud the beneficiaries. Such considerations are not controlling, nor do they measure the duty of a trustee in dealing with trust property under such circumstances and conditions as are here disclosed. The present case does not rest upon a claim of actual or intentional fraud upon the part of the trustee nor upon his negligence or bad faith but upon an alleged breach of a fundamental fiduciary duty inherent in the trust relation. I am unable to agree with the conclusion of the Master in this respect.

The defense based upon the claim that stock of the holding company was substantially equivalent to that of the National Bank is so obviously without merit that it calls for no comment.

The Master found, in substance, that the plaintiff, Charles M. Thruston, was well educated, intelligent and well informed; that at the time of the division of the estate he received the stock in the Fourth and First Banks, Inc., with full knowledge that it was stock in a holding company which held the stock of the National Bank and the Trust Company; that he knew there was a close union between the three institutions but did not know that the personnel of their boards of directors were identical; that after receiving his share of the estate he kept himself fully informed about the properties which he received, their condition and possibilities; that he was not misled by any misconduct of the officials of the old Nashville Trust Company, the trustee, or blinded by his own confidence in the Trust Company, and that on May 8, 1930, he wrote a letter to the Trust Company approving the division of the estate as made; that he dealt with the holding company stock in the exercise of his rights of ownership in various ways for approximately five years without complaint. He therefore concluded that the plaintiff, Charles M. Thruston, sufficiently evidenced his acquiescence in the exchange of the National Bank stock for that of the holding company to constitute ratification and confirmation of the transaction and upon that ground, as well as under the equitable doctrine of laches, he held the plaintiffs' right of action barred.

Acquiescence, in order to constitute release of a trustee from liability for such a breach of duty as that shown in this record, must have occurred when the beneficiary had knowledge, not only of all the facts attending the transaction, but of his legal rights in respect thereto. Ratification may not be invoked to raise an estoppel or bar to relief in the absence of a showing of an intentional relinquishment or abandonment of a known right or privilege. 1 Restatement of the Law of Trusts, §§ 216, 217, 218; 4 Bogert on Trusts and Trustees, §§ 941, 942, 943; Perry on Trusts and Trustees, 7th Ed., §§ 949, 950, 951; Brunn v. Hanson, 9 Cir., 103 F.2d 685, 701.

In the case of Carnes and Perry v. Polk, 4 Cold. 87, 44 Tenn. 87, in reference to a voidable transaction which might have been confirmed by the party entitled to avoid it, it was said: "* * * to render the confirmation valid, it must be done with a knowledge, that the act he is doing, is to have the effect of confirming an impeachable transaction; otherwise, the act amounts to nothing as a confirmation * * *."

The Master's finding that "Charles was fully informed of all the necessary material facts touching his rights at the date of the division" is a conclusion which seems unwarranted, for it was neither found by the Master nor established by the proof that prior to a short time before instituting the suit he had any knowledge of his legal right to disaffirm or impeach the transaction on the ground of a breach of fiduciary duty on the part of his trustee or that he knew of the self interest of the trustee in the transaction or that such self interest on the part of the trustee constituted a legal ground upon which he had the right to avoid it. The plaintiff was under no duty to make inquiries as to such matters and was not chargeable with knowledge of his legal rights. Perry on Trusts, 7th Ed., § 850; Adair v. Brimmer, 74 N.Y. 539, 544; Thompson v. Park Savings Bank, 68 App. D.C. 272, 96 F.2d 544.

Whether plaintiff's delay for a period of approximately five years before instituting the action is sufficient to constitute a bar under the equitable doctrine of laches is to be determined entirely by equitable considerations in the light of the peculiar circumstances of the case. "The question of laches does not depend, as does the statute of limitation, upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under all the circumstances of the particular case, plaintiff is chargeable with a want of due diligence in failing to institute proceedings before he did." Townsend v. Vanderwerker, 160 U.S. 171, 186, 16 S.Ct. 258, 262, 40 L.Ed. 383.

The fiduciary relationship did not terminate with the division made on April 14, 1930. As to one-half of the estate, the trust was a permanent one, and as to the other half the fiduciary relation continued under an agency agreement. Where the parties sustained such confidential relations to each other, in the interest of justice, a court of equity will look upon delay with much more indulgence, for trustees should not be allowed to say that beneficiaries of the trust ought to have suspected them and should be charged with what they might have found out upon inquiry aroused by such suspicion. McIntire v. Pryor, 173 U.S. 38, 53, 19 S.Ct. 352, 43 L.Ed. 606; Kilbourn v. Sunderland, 130 U.S. 505, 519, 9 S.Ct. 594, 32 L.Ed. 1005.

There was nothing to cause the plaintiff to suspicion that the trustee had any interest of its own to serve in the transaction. "There can be no laches in failing to assert rights of which a party is wholly ignorant, and whose existence he had no reason to apprehend." Halstead v. Grinnan, 152 U.S. 412, 416, 14 S.Ct. 641, 643, 38 L.Ed. 495; Scott on Trusts (1939) § 219.2, p. 1168.

The delay in this case is explained by the plaintiff's lack of knowledge of the relation of the trustee to and its interest in the transaction and of his legal rights thereunder and, in view of the subsisting fiduciary relationship, want of diligence is not imputable to him.

The merger of 1931 placed the defendant, Nashville and American Trust Company, in the same position occupied by the old Nashville Trust Company and made it liable "to the same extent as if said debts, liabilities or duties had been incurred or controlled by it." Liability to the plaintiffs on the part of the National Bank and the holding company does not arise from indemnity contracts which they executed at the time of the merger, but from their active participation in the wrongful act of the trustee which they dominated and controlled.

It is not shown that the delay was so great that the controversy cannot be determined without danger of doing injustice; nor is it shown that by reason of loss of evidence, the death of witnesses or any other change of conditions or relations of the property or the parties, it is now inequitable to permit the beneficiaries of the trust to assert their rights. I am unable to agree with the holding of the Master that the plaintiff is estopped to maintain the action either by reason of acquiescence, ratification, affirmation or laches. Lafferty v. Turley, 3 Sneed 157, 35 Tenn. 157; Prewitt v. Bunch, 101 Tenn. 723, 50 S.W. 748; and Evans v. Steele, 125 Tenn. 483, 145 S.W. 162.

The defendants plead and rely upon the three year Statute of Limitation of Tennessee, and the "Fourth and First National Bank" and "Fourth and First Banks, Inc.", who were not made defendants in the case until April 16, 1936, plead and rely also upon the six year Statute of Limitation.

An action for breach of the duty of loyalty on the part of a trustee in the administration of an express trust and for culpable participation in the breach by others is one which is exclusively of equitable cognizance. 1 Restatement of the Law of Trusts, § 197. It is neither predicated upon nor in aid or support of a legal right. In such a case Federal Courts of Equity will not adopt or apply a local statute of limitation as a substitute for their own doctrine of laches unless such statute is applied to like causes of action in the courts of the state. Russell v. Todd, Feb. 26, 1940, 60 S.Ct. 527, 84 L.Ed. ——.

In the case of Jackson v. Dobbs, 154 Tenn. 602, 290 S.W. 402, 405, after reviewing numerous Tennessee cases relative to the applicability of the state statutes of limitation to cases involving express trusts, the Court said: "Necessarily, only a court of chancery is clothed with jurisdiction to enforce such a trust, and in such case the three and six year statutes have no application."

In the absence of Tennessee authority to the contrary, I accept this case as conclusive that neither of the statutes of limitation relied upon by the defendants would be applied by the courts of Tennessee in bar of a suit like this, and consequently they are not applicable here.

The conclusions stated are fully determinative of the rights of the parties asserted herein, and make it unnecessary to discuss or determine any of the other questions presented by exceptions to the Master's report.

I am of the opinion that the plaintiffs, are entitled to judgment against the Nashville and American Trust Company, the Fourth and First National Bank and Fourth and First Banks, Inc., for the amount claimed. In view of all the circumstances of the case, interest is allowed at the legal rate only from the date the suit was filed, October 29, 1935. In so far as the conclusions of the Master are contrary to the views herein expressed, the plaintiffs' objections to the Master's report are sustained.

Let a judgment be submitted for entry in conformity herewith.