MANUEL LEBRÓN, JR., ET AL., Plaintiffs and Appellants, *v.* PORTO RICO RAILWAY, LIGHT AND POWER COMPANY, Defendant and Appellee.

No. 11421. Argued February 1, 1955.—Decided September 27, 1955

*Guillermo Bauzá* for appellants. *Brown, Newsom & Córdova* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

This is an action of claim for wages brought in the former District Court of San Juan by Manuel Lebrón, Jr. and 360 other plaintiffs against the Porto Rico Railway, Light & Power Company. Two causes of action are set out in the complaint. The first is predicated on Act No. 49 of August 7, 1935 (Spec. Sess. Laws, p. 538), as construed in *Cardona* v. *District Court*, 62 P.R.R. 59, namely, a claim for payment of "the ninth hour," and the second is based on § 553 of the Penal Code, as construed in *Compañía Popular* v. *District Court*, 63 P.R.R. 116, namely, to recover wages for each "seventh day" worked. After the defendant answered the complaint, the lower court, on the authority of Rule 53 of the Rules of Civil Procedure, appointed a master to receive the evidence and report on the result. The master thus appointed held several hearings and received the evidence of both parties. After the case was submitted on the briefs, the master rendered his report dismissing all the claims of plaintiffs. The latter then filed objections to the master's report. The court set a hearing to hear the parties on those objections. The defendant contended: (1) that the objections were very general in their terms; (2) that the master's findings of fact should be accepted unless clearly erroneous; and (3) that since the evidence was conflicting, the master's findings of fact could not be disturbed. Within a term allowed by the court at plaintiffs' request, the latter filed another document entitled "Objections to the Master's Report." The defendant then filed a motion to affirm the master's report. Plaintiffs objected and the parties finally submitted

the case to the court on the objections to the master's report and the defendant's motion for affirmance thereof.

After a careful review of the entire evidence submitted to the master as well as a careful study of the questions of law involved in the case, the lower court adopted and approved the master's report.[1] The court therefore rendered judgment dismissing each and every one of the claims comprised in the complaint. Feeling aggrieved, the plaintiffs took this appeal charging the commission of a single error, to wit:

"The lower court erred in affirming the master's findings which were clearly erroneous."

Under this general assignment appellants discuss the same questions which they raised in the trial court in their objections to the master's report.

The extent of the judicial review of a master's findings is established by the Rules of Civil Procedure as well as by the authorities and commentators. In all cases the court shall accept the master's findings of fact unless clearly erroneous. Rule 53 (e) (2) of the Rules of Civil Procedure; *Dolan* v. *Day & Zimmerman*, 65 F. Supp. 923; *Collins* v. *Burton—Dixie Corporation*, 53 F. Supp. 821; *Lupton* v. *Chase Nat. Bank of City of New York*, 89 F. Supp. 393; *Dyker Bldg. Co.* v. *United States*, 182 F. 2d 85; *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U. S. 680; 5 Moore's *Federal Practice* 2981 (2d ed.) It is the duty of the master to consider carefully the oral evidence, to determine the weight of the testimony of the witnesses and their credibility. *Titus* v. *Rorick*, 167 F. 2d 571; *O'Hara* v. *Murphy*, 137 F. 2d 154, *cert. denied*, 320 U. S. 795. Therefore, his findings of fact based on oral testimony, where credibility of the witnesses is involved, are entitled to great weight.

---

[1] "The findings of a Master, to the extent that the court adopts them, shall be considered as the findings of the court." Rule 52 (a) of the Rules of Civil Procedure.

*Stonega Coke & Coal Co.* v. *Price*, 106 F. 2d 411; *O'Hara* v. *Murphy, supra;* 5 Moore's *op. cit.*, p. 2984. This is not so when the master's findings are based upon documentary evidence and depositions or upon inferences, deductions, or conclusions derived from uncontroverted, admitted, or stipulated facts in which case neither the trial nor the appellate court is in a position different from that of the master to make its own findings. *Thruston* v. *Nashville & American Trust Co.*, 32 F. Supp. 929; *Carter Oil Co.* v. *McQuigg*, 112 F. 2d 275; *Kycoga Land Co.* v. *Kentucky River Coal Corp.*, 110 F. 2d 894, and cases therein cited. As to the master's conclusions of law and those determinations which involve a mixed question of law and of fact, Rule 53(e)(2) does not limit in any manner whatsoever the extent of the judicial review. See 5 Moore's *op. cit.*, p. 2989, and cases cited in footnote 1 of that page. As to the "unless clearly erroneous" provision, the same test or touchstone is prescribed by Rule 53(e)(2) for the judicial review of the master's findings of fact as is applied by Rule 52(a) to the findings of fact of the District Court (now Superior Court) upon appeal. 5 Moore's *op. cit.*, p. 2982; *United States* v. *Village of Highland Falls*, 154 F. 2d 224, *cert. denied*, 329 U. S. 720.

■ On the other hand, normally this Court will accept the findings of fact of a master after they have been affirmed and adopted by the Superior Court. This does not mean that this rule is inflexible, but we follow the rule that an appellate court will not disturb the findings of a master, affirmed by a lower court, upon a disputed question of fact, unless a clear and manifest error has been committed. See *Beckley Nat. Bank* v. *Boone*, 115 F. 2d 513 (4th Cir. 1940), *cert. denied*, 313 U. S. 558; *In re Van Sweringen*, 111 F. 2d 378 (6th Cir. 1940); *In re Avery*, 114 F. 2d 768 (6th Cir. 1940); *Badenhausen* v. *Guaranty Trust Co. of New York*, 145 F. 2d 40 (4th Cir. 1944), *cert. denied*, 323 U. S. 797; *Dyker Building Co.* v. *United States to use of Parreco*, 182

F. 2d 85 (App. D. C. 1950) ; *Connolly* v. *Gishwiller*, 162 F. 2d 428 (7th Cir. 1947), *cert denied*, 332 U. S. 825; *Atwood* v. *Kleberg*, 163 F. 2d 108, 114 (5th Cir. 1947), *cert. denied*, 332 U. S. 843; *In re Carozza*, 136 F. 2d 280 (App. D. C. 1943) ; *O'Hara* v. *Murphy, supra; B. F. Sturtevant Co.* v. *Massachusetts Hair & Felt Co.*, 122 F. 2d 900 (1st Cir. 1941),. *cert. denied*, 315 U. S. 823.

■ As stated above, in the second cause of action wages. were claimed at double rate for each seventh day (day of rest) pursuant to the provisions of § 553 of the Penal Code,. as construed in *Compañía Popular* v. *District Court, supra*. Regarding this second cause of action, the defendant had set up as special defense the unconstitutionality of § 553. While the case was pending before the master, we held in *Laboy* v. *Corporación Azucarera, etc.*, 65 P.R.R. 397, that the provisions of § 553 of the Penal Code, as construed in *Compañía Popular* v. *District Court, supra*, were void and ineffective as being in conflict with the Organic Act of Puerto Rico. In view of that decision, the master dismissed the complaint as to the second cause of action. Appellants did not object to this conclusion of the master.

In the first cause of action, 281 plaintiffs claimed wages which had not been paid to them at double rate for work performed in excess of eight hours a day.

Of these 281 claims, the master held that 15 had been presented in duplicate through inadvertence. Plaintiffs accepted this conclusion of the master. Twenty-seven other plaintiffs presented no evidence whatsoever in support of their claims and the same were dismissed. The plaintiffs. also accepted this conclusion of the master.

■■ Of the 281 plaintiffs, 186 of them appeared as plaintiffs in the case of *Lino Salgado Ortiz et al.* v. *Porto Rico Railway, Light & Power Company*,. defendant herein, prosecuted under No. ....., Civil Case 379, before the United

States District Court for Puerto Rico. In that case a Consent Decree was rendered on December 28, 1942, ordering the defendant to pay a certain amount of money in satisfaction of all the claims of the 186 plaintiffs under the Federal Fair Labor Standards Act and Insular Act No. 49 of August 7, 1935.[2] The defendant complied with this decree and, upon receipt of the corresponding payments, the 186 plaintiffs and the defendant executed a written contract of settlement in which their alleged claims under Act No. 49 of August 7, 1935 were specifically included.[3] In *Urbino*

---

[2] This Consent Decree reads in part as follows:

"This cause came on to be heard at this term upon a stipulation filed by the parties on this date, which is hereby approved, and in accordance with the terms of said stipulation it is hereby ordered, adjudged and decreed:

"1. That the defendant corporation pay to the plaintiffs the amounts of money set out and stated opposite plaintiffs' names in the statement or report attached to the stipulation filed and which statement or report was prepared by the firm of public accountants Sparrow, Waymouth & Co., dated December 21, 1942, less 10%, in complete and total satisfaction of all the claims, demands and causes of action of the plaintiffs against the defendant corporation for wages, overtime and liquidated damages under the Federal Labor Standards Act of 1938 and under all laws in force in Puerto Rico regulating the hours of work and the relations between employers and employees.

"2. Compliance with this decree and payment by the defendant corporation in accordance with the terms hereof shall operate as a complete release and discharge in favor of defendant corporation of all claims of the plaintiffs in this case or of any other employees of the defendant corporation who may join in this action and accept this decree, for wages, overtime and liquidated damages and all claims for compensation under the Federal Labor Standards Act of 1938 and under all laws in force in Puerto Rico regulating hours of work and the relations between employers and employees."

[3] The dispositive part of this contract reads as follows:

" . . . In view of the foregoing reasons, the parties have agreed to make this Contract of Settlement which they execute under the following terms and conditions: A.—For and in consideration of the amounts of money paid by the corporation to the employees, set out and stated opposite the employees' names and which they admit having received in complete satisfaction, the employees hereby accept all the terms and pronouncements of the consent decree rendered by the United States District Court for Puerto Rico in Civil Case No. 3179, and agree and consent that their attorneys, or the company's attorneys file in their name the corresponding

v. *Porto Rico Railway, Light & Power Co.*, 164 F. 2d 12, it was held that the Consent Decree was valid.[4]

The master sustained the defense of res judicata as to the 186 plaintiffs and dismissed their complaints The plaintiffs filed objections to this conclusion and now contend that it is erroneous on the ground (1) that they never agreed to the consent decree nor approved the settlement contract; (2) neither the contract nor the decree included their claims under Act No. 49 of August 7, 1935; and (3) the settlement contract is contrary to public policy.

Regarding the first point, the master found as follows:

". . . This assertion, however, is defeated by the testimony of Messrs. Arturo Ortiz Toro and Hipólito Marcano, attorneys for plaintiffs in that case; the testimony of Mr. Guillermo González, attorney for the defendant in that case; the director or manager of the defendant, Paul W. Raymer; and the testimony of some of the plaintiffs themselves, which definitively establish that those 186 plaintiffs executed of their own will the contract in question on which the decree of the Federal Court was based, that they understood and were fully aware of the contents of the contract, and that their attorneys informed them fully of all details of the transaction."

This finding is based on oral testimony. There is sufficient evidence in the record to support it. It was the duty of

motions joining them in this action and accepting the terms of this decree; and they do hereby release and discharge the corporation of any and all claims, demands, and causes of action the undersigned employees have or might have against the company for wages, overtime, and damages relating to the work performed and services rendered by the employees of the corporation under the Federal Fair Labor Standards Act of 1938, under Act No. 49 of August 7, 1935, and under all laws in force regulating the hours of work and the relations between employers and employees. Signed in San Juan, Puerto Rico, this 28th day of December, 1942."

[4] In that case it was said:

"There being no showing of fraud or duress practiced upon the plaintiffs when they settled their first action against the defendant, indeed we must assume from the District Court's approval of that settlement in its consent decree and from its findings in the case at bar, that the settlement was fairly and honestly arrived at in arm's length dealing untainted by fraud or duress, we see no reason why the statute should not be given effect according to its clear terms."

the master to consider carefully the oral evidence, pass upon the credibility of the witnesses and the weight of their testimony. *Titus* v. *Rorick, supra; O'Hara* v. *Murphy, supra.* Since that finding of fact was confirmed by the lower court, we will not disturb it on appeal in the absence of a showing that a clear and manifest error was committed. Rules 52 (*a*) and 53 (*e*) (2) of the Rules of Civil Procedure; 5 Moore's *Federal Practice*, p. 2982; *United States* v. *Village of Highland Falls, supra.*

█ As to the second point, appellants again are wrong. The Consent Decree and the Settlement Contract specifically referred to and included the claims under Insular Act No. 49 of 1935, which are the same claims involved in this litigation.

█ Neither do we agree with appellants that the Settlement Contract is contrary to public policy. Their claims cover the period from November 7, 1935 to October 24, 1938, and are predicated, as already stated, on Act No. 49 of 1935. This was not a wage law; it was a maximum-hour statute and its sole purpose was to limit the hours to be worked in any normal day. *Cardona* v. *District Court*, 62 P.R.R. 59, and *Chabrán* v. *Bull Insular Line*, 69 P.R.R. 250. That statute contained no provision whatever prohibiting extrajudicial or judicial compromises of claims involving unpaid wages. Nor do we know of any other insular statute prohibiting at that time this class of compromises,[5] nor of

---

[5] Act No. 8 was enacted on April 5, 1941 (Sess. Laws, p. 302), creating the Minimum Wage Board with authority to fix minimum wages, working hours, and other work conditions. Under § 20 it is illegal to pay a wage lower than the minimum fixed by the Board pursuant to the Act, and § 25 authorizes the judicial claim of unpaid amounts up to the total amount of the minimum wage plus an amount equal to 50 per cent of the unpaid amount as an additional penalty, irrespective of any agreement which may have been made to work for a smaller wage.

Although this statute contains no provision on compromises involving unpaid wages, §§ 20 and 25 established a public policy in that (*a*) the agreements to work for a wage lower than that fixed by the Minimum

any decision of this Court on the question of judicial or extrajudicial compromises under the Act of 1935. Although the question was raised in the cases of *Jiménez* v. *District Court*, 65 P.R.R. 35, and *García* v. *District Court*, 69 P.R.R. 142, we deemed it unnecessary under the facts of those cases to make a decision thereon. In any event, we will not stop to discuss this point. The same question was raised in *Urbina* v. *Porto Rico Railway, Light & Power Co.*, 164 F. 2d 12, in connection with the Federal Fair Labor Standards Act which, unlike our Act of 1935, is a minimum-wage law. The attack in that case was on the same Consent Decree and the same Settlement Contract now under our consideration, in which the validity thereof was upheld, rejecting the contention that they were opposed to public policy. As a consequence, the defense of res judicata set up by the defendant and based upon the Consent Decree now under our consideration, was successful.

In view of all the circumstances of this case, we feel bound to uphold the validity of the Consent Decree and the Settlement Contract with their corresponding legal effects, since the plaintiffs had an opportunity to raise the same

Wage Board were void, (*b*) the payment of a wage lower than the minimum was illegal, and (*c*) the laborer has the right to claim judicially the additional penalty. This Act did not repeal the Act of 1935. Still, its provisions, which are prospective, do not affect in any way plaintiffs' claims.

The Act of 1935 was repealed by Act No. 379 of May 15, 1948 (Sess. Laws, p. 1254). This Act establishes a definite public policy with respect to compromises. That Act declares that the additional compensation fixed for extra hours of work may not be waived, and that every agreement by the employee waiving such compensation shall be void (section 12); it grants to the employee the right to claim judicially the unpaid wages at the rate fixed in the Act for regular and extra hours of work, plus a like sum as liquidation of damages; it authorizes the compromise of a judicial claim with the intervention of the Commissioner of Labor, now Secretary of Labor; it declares that every extrajudicial compromise in regard to the payment of wages for regular hours, extra hours, and additional compensation as liquidation for damages shall be void, except where the compromise is made before the Commissioner of Labor or any of the attorneys of the Department of Labor appointed by the Commissioner (section 13).

question in connection with the Insular Act and did not do so.[6]

The master found that the claims of 57 plaintiffs had prescribed. The petition was filed on May 7, 1945. These 57 plaintiffs had ceased to render "the respective services" to the defendant on or before May 6, 1942, because they (a) had resigned; (b) had been pensioned; (c) had been discharged, or had ceased to render services for a substantial period without there being any circumstances to show that their labor contract had not terminated. With respect to these findings of the master, however, the appellants confined themselves to discussing in this Court the effects of the retirement by pension, for the purposes of prescription.

They contend, incorrectly and without citing any authorities, that while the laborer is receiving a pension he maintains with his employer the relationship of employee and employer, and that not until this relationship ceases does the period of limitation begin to run.

Section 1867 of the Civil Code [7] provides that actions for the fulfillment of the obligation for the payment to mechanics, servants, and laborers of the amounts due for their services prescribe in three years, and that the time for the prescription "shall be counted from the time the respective services have ceased to be rendered." As correctly pointed out by the appellee, appellants' argument ignores the basic

---

[6] It is a judicial function and an exercise of the judicial power to render judgment by consent. *Pope* v. *United States*, 323 U. S. 1; *United States* v. *Radio Corporation of America*, 46 F. Supp. 154. The general rule is that a valid judgment entered by consent operates as res judicata to the same extent as a judgment entered after answer and contest, and is binding and conclusive upon the parties and those in privity with them. See *Valdés* v. *Hastrup*, 64 P.R.R. 569, and annotations, in 97 L. Ed. 1191. The doctrine of res judicata which, we know, is based upon the public policy of putting an end to litigation, yields to considerations of public policy other than those underlying the doctrine. The courts, however, are reluctant to recognize these exceptions to the doctrine of res judicata and they only do so under the most urgent circumstances although courts may be more willing where the judgment is entered by consent.

fact that the retirement precisely entails the termination of the services. The retired employee receives the pension, but does not render services. We have already held in other cases that the three-year prescriptive period provided by § 1867 of the Civil Code begins to run from the date the respective services have ceased to be rendered. *Vicenty* v. *Corona Brewing Corporation*, 73 P.R.R. 131; *Chabrán* v. *Bull Insular Line*, 69 P.R.R. 250; *Valiente & Cía.* v. *District Court*, 68 P.R.R. 491; *Muñoz* v. *District Court*, 63 P.R.R. 226.

In view of the foregoing, we must conclude that the master's finding on the question of prescription was not erroneous, and that, therefore, the lower court acted correctly in affirming it.

■ The master found that 162 claimants had received pay at double rate for all overtime in excess of eight hours a day. Of these claims, 26 were dismissed for this reason, since the remaining 136 were dismissed for different reasons, to wit: prescription, failure to offer evidence to support the claims, and the fact that plaintiffs were included among those who received pay under the Settlement Contract.

In 1942, all the books, records, and accounts of the defendant were taken over by the Water Resources Authority. After the present suit was filed, Stagg, Mather & Hough, a firm of public accountants, studied and examined all the records, books, and accounts of the defendant. Although the

---

See annotations in 97 L. Ed. 1193, and 88 L. Ed. 389. We are not convinced that the plaintiffs come within such an exception.

[7] This section provides in its pertinent part:
"Section 1867.—Actions for the fulfilment of the following obligations shall prescribe in three years:

"........

"3. For the payment of mechanics, servants, and laborers the amounts due for their services. . . .

"........

"The time for the prescription of actions referred to in the three preceding paragraphs shall be counted from the time the respective services have ceased to be rendered."

records were not entirely complete, the pay rolls, with a few exceptions, were found and examined by that firm. All those documents were presented in evidence by the defendant. The master also received in evidence the testimony of the defendant's paymaster and of its director. Upon this documentary and oral evidence presented by the defendant and upon the testimony of some of the plaintiffs themselves, the master found, as a matter of fact, that these 162 plaintiffs had received pay at double rate for overtime in excess of eight hours a day.

After a detailed exposition, by way of findings of fact, on the nature of the labor contract under which the plaintiffs worked for the defendant, the manner in which its records and work records were kept, manner of wage payment, system of work shifts, etc., the master stated:

"The foregoing findings are also supported by the testimony of some of the claimants, notwithstanding the fact that a great majority of them denied having received any pay for overtime and also denied that the regular hours of work were those above mentioned. Irrespective of the testimony of these claimants, neither the records and accounts of the defendant and the testimony in this connection nor their correctness or genuineness were challenged. Those records and accounts apparently have been kept in the regular course of the defendant's business, and the total amount appearing from the pay rolls to have been paid agrees with the general financial condition of the books which were also examined by that accounting firms."

The evidence as to the number of extra hours worked by the plaintiffs and as to whether or not they received pay for those extra hours, was therefore contradictory. The master resolved the conflict in the evidence against the plaintiffs, and it has not been shown that in so doing he abused his discretion. He was not bound to reject the documentary and oral evidence presented by defendant and to give full credit to the rather inaccurate and unconvincing oral evidence presented by the claimants. *Jiménez* v. *District Court,*

65 P.R.R. 35, and *Vélez* v. *Royal Bank*, 65 P.R.R. 912. Consequently, this finding of the master was not clearly erroneous and, therefore, its affirmance by the lower court was not error.

 It remains for us to consider the claims of 11 claimants. The master found that five of these claimants did not work for the defendant during the period covered by their respective claims, as revealed by the defendant's records, and, consequently, he dismissed their claims.

We will not stop to discuss this finding of the master, since appellants have failed to do so in their brief. The remaining six complaints were dismissed by the master on the ground that the evidence presented in support of their claims was insufficient.

In attacking these findings, appellants refer to and discuss in their brief only the claims of Rogelio Bibiloni, Euclides Quiñones Vidal, and Carlos Sabater. As to the first two, the master correctly decided that the evidence presented by them was so general and indefinite that it was impossible to determine, even approximately, the number of extra hours that they allegedly worked for the defendant. His findings are fully supported by the evidence and will not be disturbed on appeal. As to the *onus probandi* in cases of this nature, see *Vélez* v. *Royal Bank*, *supra*, and *Sierra* v. *Eastern Sugar Associates*, 71 P.R.R. 832. Regarding Sabater, the other plaintiff, the master did not believe his testimony and decided the conflict in the evidence against him as to the number of extra hours allegedly worked by him. We find no ground for disturbing this finding of the master.

For all the foregoing reasons, the judgment appealed from will be affirmed.

Mr. Justice Belaval did not participate herein.