## In re PULLMATCH, Inc.
### No. 6444.

District Court, S. D. Ohio, W. D.
May 10, 1939.

Milton Gladstone, of New York City, and Herbert M. Jacobson, of Dayton, Ohio, for R. A. Mumm.

Squire, Sanders & Dempsey, of Cleveland, Ohio, and Carroll Sprigg, of Dayton, Ohio, for Pullmatch, Inc.

NEVIN, District Judge.

Rheinhart A. Mumm, on March 1, 1938, filed a claim, in the sum of $35,332.82,

against the above named debtor corporation in proceedings under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. Claimant asks allowance of $33,972.15 as being equivalent to the amount of salary he would have received for the remainder of his term under a certain contract of employment with debtor corporation. The balance of claimant's claim, in the sum of $1350.67, is for expenses he alleges he incurred on behalf of debtor, and for which he seeks reimbursement.

On March 26, 1938, debtor corporation filed an objection in writing to the allowance of any part of the claim in the total sum of $35,332.82, and on April 1, 1938, it filed an application praying the court for a hearing upon debtor's objection to the claim.

The matter was subsequently referred by the court to Norman E. Routzohn (Referee in Bankruptcy) as Special Master to take the testimony and to report the same, together with his findings of fact, conclusions of law and recommendations, to the court.

On August 24, 1938, the Special Master filed his report herein, together with a transcript of the evidence taken before him, along with the exhibits introduced in evidence and made a part of the record.

The report and transcript show that, beginning on April 20, 1938, and continuing thereafter from day to day until completed, the hearing on the objection of the debtor corporation to the claim of Mr. Mumm was held before the Special Master pursuant to the order of the Court.

On September 13, 1938, claimant, R. A. Mumm, filed his exceptions to the report of the Special Master and this matter is now before the court on these exceptions to the Special Master's report.

In his report the Special Master finds that the objection of debtor corporation to the claim of R. A. Mumm to the extent of $33,972.15 (as being the equivalent to the amount of salary claimed by Mr. Mumm) is well taken; that the objection should be sustained, and that the claim of Mr. Mumm to this extent should be denied. The Special Master bases his conclusions on certain findings of fact as set forth in his report.

The court has very carefully considered the exceptions filed on behalf of Mr. Mumm and in this connection has read the transcript of the evidence taken before the Special Master and all of the briefs of counsel, both those filed before the Special Master and those later filed with the court by counsel for the respective parties on the exceptions to the Special Master's report.

One of the questions involved as to which evidence was introduced and as to which the master has made his finding of fact is with reference to the activity of Mr. Mumm in the organization of what is known as the Phoenix Match Company. As to this there is a conflict of evidence bearing particularly on the question of the purpose and intent of Mr. Mumm in the organization of that company. Counsel for Mr. Mumm claim that, after seeing how enthused Major Schuman and De Saas were over a certain new type of match, Mumm believed that the course which he pursued was the only one that could save Pullmatch, stating in their brief (before the Master, pp. 7, 8): "Here it soon became apparent that the two companies, if another one was to be formed, had to work together jointly. If capital could not be obtained without the formation of a different company, then acting as a reasonable person would under the circumstances with so much at stake, Mumm thus organized what is known as the Phoenix Safety Match Company. This new corporation was formed to satisfy Eastern capital, knowing that this could be the only salvation for Pullmatch as it was planned and hoped to get a deciding voice in this merger which would stop the eternal bickering that was constantly harassing the operations of the Pullmatch at Piqua. It was with this thought in mind that Mumm saw the necessity of bringing to his side Mrs. Orr, who had been residing in Florida."

As to this counsel for debtor corporation submit, in their brief (before the Master, pp. 12, 13) that:

"On this point Mumm testified that his object was to attract capital for the Pullmatch business, and that such capital could be obtained only through a new corporation. He admitted that the Phoenix company was designed to take over the assets and business of the Pullmatch companies, as well as to manufacture and sell the so-called Phoenix match. This admission was made by Mumm on cross-examination in the following language (Record, p. 49):

"'Question: Did you authorize van Wyck to say to Mrs. Orr that the people

886

who are going to back the Phoenix Match Company would only do so if Phoenix acquired the assets and business of Pullmatch, Incorporated? Answer: I did not authorize him, but that is a fact, * * *'

"The only evidence of any kind supporting Mumm's contention that he organized the Phoenix company in good faith for the benefit of everyone interested in the Pullmatch companies is his own statement. Even Mumm's own testimony does not go so far as to support any theory that he was working for the benefit of Pullmatch, Incorporated and American Pullmatch Corporation as corporations, but only attempts to show that he thought the transfer to a new corporation of the assets and business of the two Pullmatch companies would ultimately benefit the persons interested in the Pullmatch companies.

"All of the evidence except the unsupported declarations of Mumm himself tends necessarily to the conclusion that Mumm was working neither for the Pullmatch companies as such, nor for the creditors and stockholders of the Pullmatch companies, when he organized the Phoenix company, but was endeavoring to obtain for himself and those who might associate with him in the Phoenix enterprise, at the expense of the other stockholders and possibly the creditors of the Pullmatch companies, the assets and business of the Pullmatch companies; that in the event of his inability to accomplish this purpose he intended to operate a competing business."

Rule 53(e) (2) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that: "In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous." Prior to the adoption of the present rules of civil procedure the rule with reference to a master's report was Equity Rule 61½, 28 U.S.C.A. following section 723, which provided that: "In all references to a master * * * the report of the master shall be treated as presumptively correct, but shall be subject to review by the court * * *."· In a note to subdivision (e) of Rule 53 it is stated that: "This [rule] contains the substance of Equity Rules 61 * * * 61½ * * * and 66 * * * with modifications as to the form", etc. It is immaterial, therefore, whether the former equity rule or the present rule (of Civil Procedure) is applied in the instant proceedings.

It is conceivable that men's minds may honestly differ on the question of Mr. Mumm's purpose and intent in effecting the organization of the Phoenix company. What conclusion in this respect the court might have come to in the first instance is not now material. The findings of fact by the master, in a broad sense, may be said to be analogous to special verdicts returned by a jury.

In Kimberly v. Arms, 129 U.S. 512, at page 525, 9 S.Ct. 355, at page 360, 32 L. Ed. 764, the Supreme Court of the United States, say: "We are therefore constrained to hold that the learned court below failed to give to the findings of the master the weight to which they were entitled, and that they should have been treated as so far correct and binding as not to be disturbed, unless clearly in conflict with the weight of the evidence upon which they were made."

Giving the findings of the master in the instant proceedings "the weight to which they" are "entitled" the court cannot say that the master's findings of fact, or any of them, in the light of all the testimony, are "clearly erroneous", or that they are "clearly in conflict with the weight of the evidence upon which they were made". The court is bound, therefore, to, and it does, confirm the report of the Special Master.

The Master states that he does not include Mr. Mumm's claim in the sum of $1350.67 for expenses in his report. He does not do so because he states (Master's Report, pp. 11, 12): "No evidence was introduced by claimant in support of his claim for expenditures made on behalf of debtor corporation. At the hearing vouchers in support of same, according to claimant's counsel, were apparently in New York. Consequently, it is impossible for the Special Master to consider the expense item of· claimant's case, especially in view of the fact that debtor corporation denies liability for same." In their reply brief, filed March 2, 1939, counsel on behalf of claimant, Mr. Mumm, state that while it is agreed that the vouchers supporting this part of the claim were inadvertently left in New York, and that this so appears in the transcript, nevertheless (Br. p. 6) "it was the understanding of counsel for the claimant that were these vouchers to be

produced and displayed to counsel for the objector, that that would be satisfactory. This was done." There appears to be no denial of this statement.

In view of the statement just referred to the court does not deem it necessary to put the parties to the expense of referring this part of the claim back to the Special Master, but, on the statement of counsel and the evidence, the court finds that the objection of the debtor corporation to the claim of R. A. Mumm in the sum of $1350.67 on account of expenses incurred on behalf of debtor corporation is not well taken, and that the objection thereto should be, and it is, overruled, and the claim of R. A. Mumm is allowed to the extent of $1350.67.

An order may be drawn accordingly.