## LUPTON v. CHASE NAT. BANK OF CITY OF NEW YORK et al.

Civ. A. 120–47.

United States District Court
D. Nebraska, Omaha Division.

March 27, 1950.

394

Alexander McKie, Jr., Omaha, Neb., for Lundy and others.

Yale C. Holland, Omaha, Neb., for Charles E. Abbott.

William H. Lamme, Fremont, Neb., for Gmo. Fahrholz and Basham, Ringe & Correa.

A. E. Royce, and Edson Smith, Omaha, Neb., for Special Master and all known and unknown stockholders and bondholders and others.

DONOHOE, Chief Judge.

Under Rule 53(e) (2), Rules of Civil Procedure, 28 U.S.C.A., in actions tried without a jury, the trial court must accept the Master's findings of fact, unless clearly erroneous. This rule was accepted by the Supreme Court of the United States in Anderson v. Mount Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 1193, 90 L.Ed. 1515. Mr. Justice Murphy, who delivered the opinion for the court, had this to say with respect to the Master's findings: "* * * This was purely a factual issue. The master made his findings in this respect through the weighing of conflicting evidence, the judging of the reliability of witnesses and the consideration of the general conduct of the parties to the suit * * * Our examination of the record leads us to acquiesce in these findings since they are supported by substantial evidence and are not clearly erroneous. And the court below correctly held that the District Court erred in failing to accept these findings and in creating a formula of compensation based on a contrary view. Rule 53(e) (2) of the Federal Rules of Civil Procedure. See Tilghman v. Proctor, 125 U.S. 136, 149-150, 8 S.Ct. 894, 31 L.Ed. 664; Davis v. Schwartz, 155 U.S. 631, 636-637, 15 S.Ct. 237, 39 L.Ed. 289."

The Circuit Courts of Appeal have adopted the rule in exactly the same manner, following the express language of the rules of Civil Procedure. Thus, in Arrow Distilleries (Mich.) v. Arrow Distilleries (Ill.), 7 Cir., 1941, 117 F.2d 636, certiorari denied 314 U.S. 633, 638, 62 S.Ct. 67, 86 L.Ed. 508, the court reversed the District Court for rejecting the Master's findings, with the following comment: "The only question of merit presented by this appeal is whether the court erred in rejecting the master's findings of fact. We think it did. Rule 53(e) (2), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723 (c), provides that in an action to be tried without a jury the court shall accept the master's findings of fact unless they are clearly erroneous * * * Under this rule the court cannot reject the master's findings of fact unless they are clearly erroneous. We think they were not clearly erroneous in this case. They were not only supported by substantial evidence, but a reading of the evidence convinces us that they were supported by a preponderance thereof."

And in O'Hara v. Murphy, 137 F.2d 154, 155, the First Circuit Court of Appeals upheld the District Court in its reliance upon the Master's findings of fact, saying: "We have carefully examined the record and cannot say that the master and the district court were clearly erroneous in concluding that Mrs. O'Hara returned the insurance policies on the 21st of September and relinquished all her rights in them."

In all of these cases the language seems to be clear to the effect that the Master's findings of fact should not be disturbed unless they are clearly erroneous. And the authority for this proposition is plentiful. See Socony-Vacuum Oil Co., Inc., v. Oil City Refiners, Inc., 6 Cir., 1943, 136 F.2d 470, certiorari denied 320 U.S. 798, 64 S.Ct. 368, 88 L.Ed. 482; National Labor Relations Board v. Remington Rand, Inc., 2 Cir., 1942, 130 F.2d 919; In re Higbee Co., D.C. N.D. Ohio 1943, 50 F.Supp. 114; Andrews v. Andrews, D.C.E.D.N.Y. 1942, 47 F.Supp. 871; Matter of Pullmatch, Inc., D.C.S.D. Ohio 1939, 27 F.Supp. 884; Michael Del Balso, Inc., v. Carozza, 1943, 78 U.S.App. D.C. 56, 136 F.2d 280; National Labor Relations Board v. Arcade Sunshine Co., Inc., 1942, 76 U.S.App.D.C. 312, 132 F.2d 8; Badenhausen v. Guaranty Trust Co. of New York, 4 Cir., 1944, 145 F.2d 40; Gold Seals Importers, Inc., v. Morris White Fashions, Inc., D.C.S.D.N.Y. 1945, 4 F.R.D. 386; Connolly v. Gishwiller, 7 Cir., 1947, 162 F.2d 428; Diamond Laundry Corp. v. Calif. Employment Stabilization Comm., 9 Cir., 1947, 162 F.2d 398; Guaranty Trust Co. v. Seaboard Air Line Ry. Co., D.C.E.D. Va.1946, 68 F.Supp. 639.

It should be noted, however, that any conclusiveness as to the Master's findings of fact does not extend to his conclusions of law. United States Trust Co. v. Mercantile Trust Co., 9 Cir., 88 F. 140; Hattiesburg Lumber Co. v. Herrick, 5 Cir., 212 F. 834; Boisot v. Amarillo St. Ry. Co., D.C. Tex., 244 F. 838. Although, of course, his (the Master's) conclusions are entitled to careful consideration.

With this in mind, we have examined the record to determine whether or not the findings of the Master, which have been objected to, are unsupported by substantial evidence; and further whether the Master has deduced any erroneous conclusions of law with respect to the matters before him.

### Claim of Lundy, Butler and Lundy Attorneys' Fees

■ The general rules concerning attorneys' fees in a case such as the present one are accurately summarized by the Master at page 47 of his report. He quotes at length from In re National Accessories, D.C., 13 F.Supp. 278. He might also have mentioned the items which should be set forth by the attorney making the claim.

"1. Consultations.
 a. Persons conferred with,
 b. Subject of the conference.
 c. Time necessarily spent.
 d. Benefits or advantages obtained for trust.
 e. Charge for the service.
2. Legal papers.
 a. Document prepared.
 b. Time required.
 c. Charge for the service.
3. Appearances in Court.
 a. Matter involved.
 b. Resistance encountered.
 c. Time necessarily required.
 d. Result obtained.
 e. Charge for the service.
4. Briefing.
 a. Law questions under consideration.
 b. Manner in which the trust was interested or concerned.
 c. Time necessarily required.
 d. Benefit derived by the trust estate.
 e. Charge for the service.
5. Miscellaneous service.
 a. Nature of the service.
 b. Time required.
 c. Benefits inuring to the trust estate.
 d. Charge for the service.

"Appointees of the court, whether receiver, trustee, or attorney, must expect their claims to be closely scrutinized by the debtor, the creditors, and by the court, and they should be meticulous in keeping accurate accounts of the various items and elements which go to make up their claim. It will not do to state in a general way services performed and then ask for a bulk allowance."

After reading Mr. Lundy's testimony, both on direct and cross examination, it appears that the Master was justified in arriving at the conclusion he did with respect to Mr. Lundy's claim; and his allowance is supported by the evidence submitted. In view of the rules of law regarding attorneys' fees there seems to be no good reason to increase the allowance. (Vol. III of the record sets out Lundy's testimony.)

### Claim of James P. Gable

There is no reason to disturb the Special Master's finding with respect to the claim of Mr. Gable. The findings are supported by the evidence mentioned in the Special Master's Report.

### Claim of John L. Lupton

The Special Master's conclusion with respect to the claim of John L. Lupton will be reversed only to the extent that it allows interest after the filing of this suit. No interest should be allowed after December 13, 1947, for the reasons set out infra in respect to Mr. Fahrholz claim.

### Claim of Charles E. Abbott

■ The problem arises as to whether or not the services rendered by Mr. Abbott as an attorney for the trustees are completely compensated for by the payment of the sum due under his contract with the trustees which contained the following provision: "That the said firm of Abbott, Dunlap & Abbott hereby agrees, in consideration of the compensation above mentioned, to render any further service that may be considered necessary or advisable in connection with the prosecution of said claim; and general other services as attorneys to said trustees during the period of the prosecution of said claim."

The Master has taken the position that the prosecution of the claim is not com-

plete until all the money has been paid to the trustee according to the terms of the award. Master's Report p. 37. That consequently Mr. Abbott can have no claim for compensation other than as provided for by the contract, because the final installments of the award have not yet been paid. Whether or not this position is sound depends, of course, on the meaning of the word "prosecution". This word is defined in Funk and Wagnall's New Standard Dictionary in the following manner:

"Prosecution * * *

2. Law (1) The instituting and carrying forward of a judicial proceeding to obtain some right or to redress and punish some wrong."

And the Seventh Circuit Court of Appeals defined the word in the case of United States v. Brazil, 134 F.2d 929, 931, with this descriptive statement: " 'Prosecution' includes commencing, conducting and carrying a suit to a conclusion in a court of justice." Citing Cohens v. Commonwealth, 6 Wheat. 264, 19 U.S. 264, 5 L.Ed. 257.

In 32 Cyclopedia of Law and Procedure, 1909 Publication, at page 727, the word "prosecution" is defined in substantially the same language: "Prosecution. As applied to actions or suits generally, the following up or carrying on of an action or suit already commenced until the remedy be attained; the act of conducting or waging a proceeding in court; the institution and carrying on of a suit in a court of law or equity, to obtain some right, or redress some * * * wrong."

In the light of the foregoing definitions and considering the circumstances which surround this particular case, the only proper and fair interpretation of the word "prosecution" would be that the prosecution terminated when the award became final. The rights of the parties were fixed, the sum of the award was certain and the dates for payment were set. In other words, the complete remedy was attained and there was nothing further to be done in prosecution of the claim.

The Master, in his findings, has taken into consideration the fact that Mr. Abbott has placed a claim for compensation for work done after the date of the award.

Though the court does not feel that these claims are adequately compensated for by the terms of the contract, the court does feel that the Master has reached the proper conclusion in disallowing these claims for other reasons.

The Master, after hearing the testimony on the subject, reached the conclusion that certain trips to New York and Washington were unnecessary. It is inconceivable that the court could hold that the prosecution of the claim had terminated and then turn around in the face of that holding and say that the trips to Washington were necessary to see that the Treasury Department made a proper disposition of the funds received from the Mexican Government. The more consistent position seems to be that the prosecution of the claim had terminated and that there was nothing that Mr. Abbott or anyone else could do to secure the more rapid payment of the award by the Treasury Department and for this reason his trips to Washington were unnecessary. And with respect to the trips to New York, there is no evidence showing that the trips were necessary and the Master's finding is to the contrary. And the Master's findings in respect to the trips to Omaha seem to be proper under the circumstances of this case.

For the reasons set out above, there is no sufficient ground to set aside the Master's findings in respect to the allowances made to Mr. Abbott.

### Claim of Gmo. (William) Fahrholz

 The first question to be determined is whether the Master reached the proper conclusion in allowing Mr. Fahrholz interest on his claim from June 30, 1941, until the day it is paid. The contract between Mr. Fahrholz and the trustees seems to be an account stated. The trustees unambiguously and unequivocally state in the contract: "that there is now due and owing him (Fahrholz) on previous salary a total sum of Eighteen Thousand One Hundred and Fifty One Dollars and Seventy Nine Cents." Exhibit 4, paragraph 2.

This seems to fulfill the requirements of an account stated since it is signed and accepted by both the trustees and Fahrholz.

"An account stated is an agreement that the balance and all items of an account representing the previous monetary transactions of the parties thereto are correct, together with a promise to pay such balance. It must show a balance due, the amount thereof, and from whom it is due. It may be made wherever the relation of debtor and creditor exists." 1 C.J.S., *Account Stated*, § 1 a, p. 693.

The objector to the Master's report contends that the fund is not due and payable because the contract further provided that Fahrholz should be paid "* * * out of the first cash payment or funds which may be realized from the claim filed before the Mexico-United States Agrarian Claims Commission in July, 1939; subject to the prior payment from the cash funds received on said 'international claim' of the fees and expenses of the trustees in conserving and liquidating the property of the corporation." Exhibit 4, paragraph 4.

This provision is not, however, in negation of the foregoing admission of the debt. It is merely the further promise to pay the debt which is recognized to be owing to Fahrholz out of the first funds available for that purpose, indicating that there are presently no such funds available. This additional promise does not make the amount of the debt, nor the time at which it became due, either contingent or uncertain. For certainly the contract as a whole would fall within the ordinary meaning of an account stated. "An account stated is a confession of a definite sum due from one party to the other at the date of the accounting ending all intricacy of account or doubt as to which side the balance may fall, and creating a strong presumption that the obligation to pay it is valid." 1 C.J.S., *Account Stated*, § 46, p. 727.

Since the contract amounted to an account stated, it was not erroneous for the Master to allow interest beginning June 30, 1941, the date of the contract, in view of the following provision of the Nebraska Statutes: "On money due on any instrument in writing, or on settlement of the account *from the day the balance shall be agreed upon*, * * * interest shall be allowed at the rate of 6 per cent". (Emphasis added.) Nebr.R.S.1943, § 45-104.

The second question to be determined is whether or not the interest on this account stated should run after the time of filing of this suit. It should be noted at the outset that the court has appointed a trustee to conserve and protect certain assets of an insolvent and defunct corporation. This is not a suit in bankruptcy, but it is, in many aspects, similar. The court has in substance appointed a receiver to handle a fund which is insufficient to meet all the claims asserted against it. There are diverse theories on the manner by which interest should be computed in the case of an insolvent debtor. First, interest might be computed up to the day the claim is actually paid. Though this method would clearly fulfill the intention of the parties as expressed in the contract, it would entail considerable administrative difficulties and violate the fundamental axiom that the delay necessitated by the liquidation should result in neither gain nor loss. This is pointed out very clearly by the Supreme Court in the case of American Iron & Steel Mfg. Co. v. Seaboard Air Line Railway Co., 233 U.S. 261 at page 266, 34 S.Ct. 502, at page 504, 58 L.Ed. 949: "* * * as a general rule, after property of an insolvent is in custodia legis interest thereafter accruing is not allowed on debts payable out of the fund realized by a sale of the property. But that is not because the claims had lost their interest-bearing quality during that period, but is a necessary and enforced rule of distribution, due to the fact that in case of receiverships the assets are generally insufficient to pay debts in full. If all claims were of equal dignity and all bore the same rate of interest, from the date of the receivership to the date of final distribution, it would be immaterial whether the dividend was calculated on the basis of principal alone or of principal and interest combined. But some of the debts might carry a high rate and some a low rate, and hence inequality would result in payment of interest which accrued during the delay incident to collecting and distributing the funds. As this delay was the act of the law, no one should thereby gain an advantage or suffer a loss."

Secondly, the court might ignore the interest altogether on the fundamental assumption that in any insolvency proceeding the debtor is unable to pay even the principal of his debts, much less the interest. But if the court were to follow this line of reasoning it would necessarily infringe on vested and constitutionally protected rights of the creditors. The Bankruptcy Act offers for a solution to the problem a middle path between the first two suggestions. Under Section 63, sub. a(1) of the Bankruptcy Act, 11 U.S.C.A. § 103, sub. a(1), it is provided, that interest on: "a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing" date is declared provable and allowable to the extent to which it "would have been recoverable *at that date*". (Emphasis added.)

But since this is not an action in Bankruptcy, we shall look to other authority before accepting the rule enunciated above. The rule with respect to interest while litigation is pending in the ordinary case is stated in Corpus Juris as follows: "The pendency of litigation between the parties to an existing debt concerning the same will not of itself suspend interest on such debt during such litigation, where the money is not paid into court. But, while there is some authority to the contrary, it has generally been held that, where there is a legal contest between persons other than the debtor, rendering it doubtful to whom the debt should be paid, the debtor is not generally chargeable with interest during such contest * * * Although there is authority apparently to the contrary, it has very generally been held that, where a fund in litigation or the amount of a disputed claim is deposited in court, or subject to its order, interest is not recoverable thereon during the time it remains so deposited." 33 C.J. Interest Secs. 153 & 154, p. 245 Cf. 47 C.J.S., Interest, § 55, p. 67. With these general principles in mind, the court feels that no interest should be allowed from the time of the filing of the suit. See Thomas v. Western Car Co., 149 U.S. 95, 13 S.Ct. 824, 37 L.Ed. 663.

■ This court took jurisdiction of the funds involved at the time the suit was filed and appointed a Special Master to determine what the rights of the parties were at that time. The rights of the parties were fixed, to a certain extent, at that time and satisfaction of their claims under those rights has been postponed by the law's delay. If the court were to allow interest to this claimant, the advantage gained would be at the expense of the other claimants and the delay for which the interest is claimed is caused by an act of law and not by any act of the other claimants. Neither reason nor authority could support such an allowance. See Collier on Bankruptcy, 14th Ed., Vol. 3, Sec. 63.16 Interest, p. 1835-1844. Leach v. Sandborn State Bank, 1930, 210 Iowa 613, 231 N.W. 497, Annotated in 69 A.L.R. 1210. The editorial introduction to the annotation stating that "where assets are insufficient to pay the principal on all claims, interest upon preferred claims is not allowed." Cf.Anno. 39 A.L.R. 457 and 44 A.L.R. 457 supplementing it. The case at bar may be distinguished from American Surety Co. v. Carbon Timber, 8 Cir., 1919, 263 F. 295.

The Master's finding that Mr. Fahrholz was entitled to $75.00 a month from July 1, 1939, to August 15, 1947, can not be set aside as clearly erroneous because the evidence indicates that there was an implied contract and the Master, after weighing the evidence, including the testimony of the parties and the written contracts entered into by them, properly concluded that there existed a contract of employment. The Master has set out the testimony in support of his conclusion. Master's Report, p. 25. It should be noted, however, that no interest should be allowed on this claim, which accrued after the date of the filing of this suit. Reasons set out supra.

### Basham, Ringe & Correa Claim

There were no objections to the Master's findings regarding this claim.

Except as modified herein, the report of the Special Master is confirmed in all things, and judgments will be entered accordingly.